638 So.2d 711 (1994)
Charles W. SAUSSY, Plaintiff-Appellee,
v.
Raylene A. SAUSSY, Defendant-Appellant.
No. 93-1303.
Court of Appeal of Louisiana, Third Circuit.
June 15, 1994.
*712 Barry Joseph Sallinger, Lafayette, for Charles W. Saussy.
David John Calogero, Lafayette, for Raylene A. Saussy.
Before GUIDRY, C.J., and LABORDE, YELVERTON, KNOLL and WOODARD, JJ.
LABORDE, Judge.
Defendant-wife appeals the trial court's determination of plaintiff-husband's monthly child support obligation. After reviewing the record, we affirm, finding no error on the part of the trial court.

Procedural History
Plaintiff, Charles W. Saussy, and defendant, Raylene A. Saussy, were married on December 6, 1980 in Mobile, Alabama. Three children, presently ages seven, nine and eleven, were born of the marriage. On November 12, 1991, Charles filed a petition for divorce. Raylene reconvened on January 3, 1992 and requested custody, child support and alimony. On November 2, 1992, the child support hearing was held. The essential issue before the court, then and now, was the amount of Charles' monthly income to be used in the calculation of support.
In calculating child support, the trial court determined Charles' income to be $1,250 per month, based on potential earnings with Gibby Automotive of $15,000 per year. The final calculation resulted in a judgment ordering Charles to pay Raylene $464.52 per month for child support, retroactive to the date of filing, January 3, 1992.
Raylene appeals this judgment and asserts the following assignments of error: (1) the trial court failed to consider that Charles was voluntarily underemployed, and thus erred in calculating child support based on Charles' "projected" earning capacity of $1,250 per month, rather than his established earning capacity of $3,000 per month, and (2) the trial court erroneously calculated the amount of retroactive child support payments based upon Charles' "projected" earnings, rather than his actual earnings from January 3, 1992 to November 2, 1992.

Pertinent Facts
Shortly before the hearing, Charles was employed by Kinney Shoe Corporation. He had been working for Kinney for eight years. Charles began as a sales person and, after several promotions, held the position of manager trainer. He was earning approximately $36,000 per year when his employment was terminated on November 2, 1992.
*713 At the hearing, Charles stated that he was unhappy working for the supervisor of his Kinney store in Lafayette. He worked 60-70 hours a week. His wife lived in Gulfport, Mississippi with the children and his job required that he live in Lafayette. He was allowed only about eight hours on his weekend visitations and he had to drive to Gulfport for that. He was asked to resign and was fired when he refused on November 2, 1992. As a result, he lost the $7,000 bonus he had anticipated for that calendar year.
His wife admitted that his long work hours and weekend work at Kinney was one of the causes of the breakup of their marriage three years earlier. She also admitted that Charles had told her he wanted to spend more time with the children.
Shortly after leaving Kinney, Charles obtained a sales position with Gibby Automotive, a franchise owned by the Winzer Corporation, his employer at the time of the hearing. He knew its owner, who was a former Kinney manager. His earnings are based solely on commission. The record reflects that Charles will earn between $14,000 and $17,000 during his first year of employment. He testified repeatedly that he had no intention of remaining at his current reduced income level, and if his income at Gibby did not increase he would get a different job.
At the hearing, it was established that after he was fired at Kinney and went to work for Gibby he was spending more time with the children.

DISCUSSION
A determination of child support is based on gross income, child care costs, health insurance premiums, extraordinary medical expenses and other extraordinary expenses. La.R.S. 9:315.2 through 9:315.7. La.R.S. 9:315.9 provides, "If a party is voluntarily unemployed or underemployed, child support shall be calculated based on a determination of his or her income earning potential..."
The first issue involves a determination of whether Charles is voluntarily underemployed. Although Charles has extensive training and experience in retail management, he is currently earning less than one-half of his previous salary. Thus, he is considered underemployed. The issue, then, is whether Charles is voluntarily underemployed. Raylene claims Charles is voluntarily underemployed because he refused to seek employment similar to the management position he held at Kinney "in blatant disregard for the financial needs of the minor children." She argues that the child support calculation should have been based on his income earning potential of $36,000, the amount Charles earned at Kinney.
La.R.S. 9:315(6)(b) provides that a party shall not be deemed voluntarily underemployed if the underemployment results "through no fault or neglect of the party." Charles testified he was fired by Kinney. Although he did not explain the details of his firing, he stated that he had been in a dispute with his supervisor.
Raylene testified he told her he was fired for falsifying company records. However, the record does not support this conclusion. Plaintiff testified that he was fired due to a dispute with his immediate supervisor, and that he did not voluntarily leave his employment. The trial court evidently believed that Charles did not lose his job through his own fault or neglect. A trial court's factual findings and credibility determinations are entitled to great weight and will not be disturbed on appeal absent manifest error. Stobart v. State of Louisiana, Through DOTD, 617 So.2d 880 (La.1993).
Second, Raylene alleges that plaintiff is voluntarily underemployed because he did not apply for jobs within his previous earning potential. In Goodall v. Goodall, 561 So.2d 867 (La.App. 2 Cir.1990), the court found that although the husband resigned one of his two jobs and was not fired, he was entitled to a reduction in his child support obligation. The court found that a "voluntary change of circumstances must be reasonable, justified, and in good faith without the intent to avoid the child support obligation." Id. at 869. Because the husband testified that he believed his loss of income was temporary, the court found that he had acted in good faith and allowed a reduction of his child support payment.
*714 In Mayo v. Crazovich, 621 So.2d 120 (La. App. 2 Cir.1993), husband quit his job earning approximately $30,000 annually in order to start his own business. Wife alleged husband was voluntarily underemployed to avoid his child support obligation. The court found that the husband acted in good faith. Although he was currently having financial problems related to starting a new business, he was working diligently to make a profit and therefore was not voluntarily underemployed.
In the present case, Mr. Saussy testified that in his eight years working for Kinney, he had worked his way up to his income of approximately $30,000. When asked about accepting a job that paid substantially less than Kinney, he stated "I am prepared to reestablish myself and work to a higher financial earning just as I did with the Kinney Shoe Corporation." The essential question here as in most matters affecting the children is what is in their best interest. See, e.g. R.S. 9:315.1B. Plaintiff also stated that his new job allows him more time to visit with his children on the weekends, since his current employment does not require him to work on weekends, as did Kinney. A father's children benefit not only by the money he is able to earn, but by the presence of his company, and nowhere does the law require that a parent work 60-70 hours to the detriment of his children's right to the parent's company.
The trial court apparently believed that plaintiff acted in good faith when he sought to spend more time with his children and when he accepted his new job. We find no manifest error in it's decision. Stobart, supra; Rosell v. ESCO, 549 So.2d 840 (La. 1989).
Nonetheless, we do need to amend in part the trial court's judgment. When the initial demand for child support was made on January 3, 1992, Charles was earning $30,000 annually. He continued in his position at Kinney for ten months, through October, 1992. He was terminated on November 2, 1992 and thereafter secured a new job which paid $15,000 a year. The trial court fixed Charles' monthly child support ($464.52) based on his current employment of $15,000 per year and made the order effective from date of judicial demand (January 3, 1992) with credit being allowed Charles for all payments made during 1992.
The record reflects that during 1992, Charles paid $7,214.00, or approximately $721.40 per month. We find that since Charles was earning more during the first ten months of 1992, his child support payments should be more for that period. Therefore, we amend the trial court's judgment to delete the reference to a credit for child support payments in 1992, but affirm the finding that Charles' monthly support obligation is $464.52, with said payment retroactive to November 1, 1992.

DECREE
The judgment of the trial court is affirmed as amended. Costs assessed to defendant-appellant, Raylene Saussy.
AFFIRMED AS AMENDED.
KNOLL, J., dissents and assigns reasons.
WOODARD, J., dissents with assigned reasons.
KNOLL, Judge, dissenting.
The majority places much emphasis on the fact that Charles was fired through no fault of his own. In my view, this is not critical in determining whether he is voluntarily underemployed. In determining whether Charles is voluntary underemployed we must ascertain whether his intent and actions are reasonable, justified, and in good faith, without the intent to avoid his child support obligations. The majority incorrectly finds that since he was fired through no fault of his own and now wants to spend more time with the children, he is not voluntarily underemployed, even though he is earning less than half of his former salary.
The majority totally ignores that Charles did not even look for a job paying more than he is presently earning. The record shows that Charles told his ex-wife that he was going to quit his job and find one that paid less to avoid paying her adequate child support. This was not refuted.
*715 In my view, under our jurisprudence, a parent, such as Charles, claiming to work for less money so the parent can spend more time with the children, is voluntary underemployed, albeit, a worthy desire. See State v. Flintroy, 599 So.2d 331 (La.App. 2 Cir.1992), where a mother who quit her job to obtain a college degree in order to eventually earn more money, was found to be voluntarily underemployed. See also Holdsworth v. Holdsworth, 621 So.2d 71 (La.App. 2 Cir. 1993). In the case sub judice, the father is voluntarily underemployed so he can spend more time with his children. While I find Charles' desire commendable, it is clearly, albeit, voluntary underemployment.
For these reasons, I respectfully dissent.
WOODARD, Judge, dissenting.
Raylene claims Charles is voluntarily underemployed because he refused to seek employment similar to the management position he held at Kinney Shoe Corporation "in blatant disregard for the financial needs of the minor children." Thus, she argues that the child support calculation should have been based on his income earning potential of $36,000; the amount Charles earned at Kinney Shoe Corporation.
Charles has extensive training and experience in retail management. Yet, he is currently working as a commissioned sales person for an automotive sales company, earning less than one-half of his previous salary. By definition, he is underemployed. The issue, then, is whether Charles is voluntarily underemployed.
La.R.S. 9:315(6)(b) provides that a party shall not be deemed voluntarily underemployed if the underemployment results "through no fault or neglect of the party." Charles testified he was fired by Kinney Shoe Corporation and that he did not want to go into the details why, but that his termination papers say he was not working his scheduled hours. Raylene testified he told her he was fired for falsifying company records. Although these reasons do not appear consistent with each other, either reason establishes that Charles lost his job through his own fault or neglect and he presented no evidence to the contrary. Additionally, Charles did not dispute Raylene's testimony that he told her that he was fired for falsifying company records or that he threatened to quit his job and take a job that paid much less so that he would not have to pay her what he thought she was due.
Charles testified that he voluntarily sought and accepted a non-managerial position, paying less than one-half of his previous salary, and that one reason he did not seek employment in retail was because he had to work weekends, which was not allowing him as much time as he wanted to see his children; he did not seek employment in management because he did not want to be responsible for the productivity of so many people. Notwithstanding these concerns, upon losing his job, he did not even consider or apply for another job which might have met his needs and provided income within his earning potential to his children. In State v. Flintroy, 599 So.2d 331 (La.App. 2 Cir.1992), even where the plaintiff quit her clerical job, earning approximately $1000 per month, in order to return to college on a full-time basis to improve her earning capacity, the court found that she was voluntarily unemployed and that her reason for such was not a sufficient reason to escape the mandatory language of La.R.S. 9:315.9, requiring the use of her income earning potential in the calculation of child support.
Accordingly, I agree with Judge Knoll that Charles' underemployment is voluntary. Further, the proper amount for the calculation of child support should be his income earning potential, which is the amount of his salary at his previous job. See Holdsworth v. Holdsworth, 621 So.2d 71 (La.App. 2 Cir. 1993).
For these reasons, I respectfully dissent.