835 So.2d 513 (2002)
Tracey Lynn Porche WALDEN
v.
Kenneth James WALDEN.
No. 2000 CA 2911.
Court of Appeal of Louisiana, First Circuit.
August 14, 2002.
*515 Thomas L. Mahfouz, Morgan City, Counsel for Plaintiff/Appellee Tracey Walden.
J.P. Morella, Patterson, Counsel for Defendant/Appellant Kenneth Walden.
*516 Before: FOGG, PARRO, FITZSIMMONS, DOWNING, and LANIER[1], JJ.
FITZSIMMONS, J.
Defendant-appellant, Kenneth Walden, sought a reduction in his child support obligation and to have the court proportionally allocate the child support between his two minor children. The trial court denied Mr. Walden's requests. He appealed. We reverse in part, and remand.

FACTS AND PROCEDURAL HISTORY
The parties to this action, Kenneth James Walden and Tracey Lynn Porche Walden, were married on October 24, 1992, in St. Mary Parish. Of their marriage, two children were born: Kennedi Claire Walden, born March 26, 1994, and Kameron Christopher Walden, born January 06, 1999.
On January 20, 2000, Mrs. Walden filed a petition for divorce pursuant to La. C.C. art. 102. A hearing on various rules was held on February 9, 2000. The testimony at this initial hearing established that Mr. Walden had been employed for approximately two and a half years at Columbia Chemical Company as a utility sacker earning $20.26 per hour. He regularly worked a significant amount of overtime. Mr. Walden testified that he worked the overtime to achieve family goals. As of December 19th, his gross earnings for the year of 1999 were $75,226.34, with $23,592.07 of that amount attributed to overtime earnings. Mrs. Walden stated he made nearly the same amount in 1998, though probably a little less. Mrs. Walden testified that Mr. Walden never complained about working overtime prior to the divorce proceedings. However, at the first hearing, Mr. Walden testified that he would no longer voluntarily work overtime because his family was no longer a unit and he was physically and mentally drained.
Mr. and Mrs. Walden mutually agreed to send their daughter, Kennedi, to St. John's, a private school, where she was in kindergarten. Mr. Walden testified that he had no problem with his daughter attending this school; and, as far as he knew, she was doing well there. Mrs. Walden testified that the tuition at St. John was $213.00 per month and that daycare and after-school care costs for both children totaled $279.50 per month. Finally, although there was a provisional visitation plan granting Mr. Walden at least four days a month with his children, Mrs. Walden agreed to remain flexible, allowing Mr. Walden any additional days that his rotating work schedule would allow.
When the hearing was concluded, Mr. Walden was ordered to pay Mrs. Walden child support of $1,591.00 per month for the two minor children. Although Mr. Walden had requested that the court not use his overtime earnings in calculating his gross income, his request was denied. The court established Mr. Walden's monthly gross income as $6,211.00 and Mrs. Walden's monthly gross income as $1,275.00, for a total monthly gross income of $7,486.00. The basic child support obligation was determined on this amount. The court then added to the basic support obligation, $279.00 for child care costs and $213.00 for private school tuition. Mr. Walden was granted the tax deductions for the two children every year. Mrs. Walden waived any right to spousal support in return for the amount of child support she would be receiving.
*517 Subsequent to the rule on February 9, 2000 and beginning in mid-June, 2000, Mr. Walden accepted a promotion to utility operator. As a result, his hourly pay increased to $20.97 per hour.
On August 14, 2000, Mr. Walden filed a rule for reduction of child support based on a change of circumstances. He asserted that he was averaging less income per month than when the initial determination of child support was made on February 9, 2000. Essentially, he claimed that, although his new job paid a slightly higher hourly rate, he was now making less income because he no longer had substantial overtime available to him.
The trial on this rule was heard on September 13, 2000. Mr. Walden introduced into evidence paycheck stubs from the date he started working in his new position. The evidence showed Mr. Walden's monthly gross income decreased from $6,211.00 to between $4,200.00 and $4300.00. The court found as a fact that Mr. Walden was voluntarily underemployed, and denied his request for a reduction in child support.
Mr. Walden had also asked the court to remove the private school tuition from the support obligation, to order Kennedi to attend a public school, and to allocate the child support award proportionally between the two children. The court denied these requests as well.
On September 25, 2000, the trial court signed a judgment denying Mr. Walden's requests. Mr. Walden has appealed.

STANDARD OF REVIEW
The standard of appellate review of factual findings in a civil action is a two-part test: (1) the appellate court must find from the record there is a reasonable factual basis for the finding of the fact finder, and (2) the appellate court must further determine the record establishes the finding is not clearly wrong (manifestly erroneous). Mart v. Hill, 505 So.2d 1120, 1127 (La.1987). Factual findings should not be reversed on appeal absent manifest error. Rosell v. ESCO, 549 So.2d 840, 844 (La. 1989); State ex rel. A.M. v. Taylor, 2000-2048, p. 8 (La.App. 1 Cir. 2/15/02), 807 So.2d 1156, 1162. If the trial court's "findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse ...." Sistler v. Liberty Mutual Ins. Co., 558 So.2d 1106, 1112 (La. 1990). Consequently, when there are two permissible views of the evidence, the fact finder's choice between them cannot be manifestly erroneous. Id.; Stobart v. State, Department of Transportation and Development, 617 So.2d 880, 883 (La.1993). A child support award will not be reversed absent an abuse of discretion. State, Department of Social Services, Support Enforcement Services, ex rel. A.M. v. Taylor, 2000-2048 at p. 8, 807 So.2d at 1162.

REDUCTION OF CHILD SUPPORT
Mr. Walden contends that the trial court erred in failing to reduce his monthly child support obligation. He argues that the trial court erroneously included overtime pay in determining his gross income for child support purposes. He also claims that the trial court erred in finding him voluntarily underemployed for taking a promotion with a higher wage, but less opportunity for overtime. He further contends that the trial court should have deviated from the child support guidelines as the amount of the award is larger than necessary to care for two small children, and that the award should at least be offset by the amount of time the children spend in his care and custody. Lastly, he argues that the trial court erred by adding gross, rather than net, child care costs to the basic support obligation. Each of *518 these elements will be reviewed separately.

Voluntary Underemployment and Extraordinary Overtime
Mr. Walden argues that the trial court should have reduced his child support obligation based on a change in circumstances since the original order. Mr. Walden maintains that the trial court was manifestly erroneous in failing to exclude his prior overtime income and in finding him to be voluntarily underemployed by taking a promotion at his company.
At the time this suit arose,[2] the law defining "gross income" for the purposes of calculating child support obligations was La. R.S. 9:315(4)(a), which stated as follows:
(4) "Gross Income" means:
(a) The income from any source, including but not limited to salaries, wages, commissions, bonuses, dividends...."
The rule for the inclusion of overtime is found in La. R.S. 9:315(4)(d)(iii), which provided:
(d) As used herein, "gross income" does not include:
(iii) Extraordinary overtime or income attributed to seasonal work regardless of its percentage of gross income when, in the court's discretion, the inclusion thereof would be inequitable to a party.
However, if a parent is voluntarily underemployed, child support shall be calculated based on his or her earning potential. La. R.S. 9:315.2(B) & 315.9.
"An award of child support may be modified if the circumstances of the child or of either parent change and shall be terminated upon proof that it has become unnecessary." La. C.C. art. 142. "An award for support shall not be reduced or increased unless the party seeking the reduction or increase shows a change in circumstances of one of the parties between the time of the previous award and the time of the motion for modification of the award." La. R.S. 9:311(A). Generally, the requisite threshold change need not be substantial. Thus, the party seeking the modification has the burden of proving that a change in circumstances has occurred since the fixing of the prior award. State, Department of Social Services, Support Enforcement Services ex rel. A.M. v. Taylor, 2000-2048 at p. 6, 807 So.2d at 1161.
Mr. Walden testified that he was working a significant number of overtime hours per week for long-term, but limited family goals: to purchase a new home and cars for the family. After the family broke up, he lost the motivation to work so many extra hours for things that were no longer family goals. Based on the evidence in the record, his monthly pay went from approximately $6000.00 to about $4200.00 per month because of the reduction in the amount of overtime. The overtime was not required by his employer, and was not an essential part of that job description, or guaranteed. Neither is this a case of a father who refused to work or one who intentionally accepted a lower paying job or a job beneath his potential and training. In fact, Mr. Walden accepted a higher paying promotion. It is only the classification of significant overtime that is at issue here.
At the time of trial, Mr. Walden was gainfully employed and made a decent living working 40-44 hours a week, with the possibility of occasional overtime. That is the basis that should be used for calculation of child support. In this particular *519 case, despite any inconsistencies in testimony, the overtime was voluntarily undertaken for a limited goal, and outside of the ordinary full-time job requirements and income. Thus, it was "extraordinary" income. To find otherwise under the particular facts here would require all parents who worked overtime for a limited goal, to continue to work the highest level of overtime achieved or be classified as underemployed.
Under the positive law specifically applicable, "extraordinary" overtime should not be included if the inclusion would be "inequitable." La. R.S. 9:315(4)(d)(iii). It is the duty of parents to support their children. La. C.C. art. 227. However, the courts must be balanced in their enforcement of this duty and not impose extraordinary requirements on parents. The concern of the law and society, and therefore the courts, should be with true unemployment or underemployment of both parents of school-aged children, not one parent's decision to discontinue extraordinary pursuits or sacrifices after the family has broken up. We find that the imposition of judicially mandated long-term overtime in this particular case would be inequitable.
Under the facts of this case, the trial court clearly erred when it considered Mr. Walden's potential, rather than actual income. For these reasons, we reverse the portion of the judgment denying his request for a reduction in his support obligation based on a change in circumstances. The trial court should have granted the request and used the actual income for the support calculation.
Normally, this court would re-calculate the support award using the income rate provided in the record. However, in this case, we have also found an error in the fixing of child care costs. Unfortunately, the record lacks the evidence necessary for re-calculation on that issue. Without the necessary child care cost figures, the final re-calculation of child support also cannot be made by this court. Thus, we remand to the trial court for a re-calculation of the child support obligation consistent with this opinion. After re-calculation, any modification resulting shall be retroactive to the date of judicial demand. La. R.S. 9:315.21(C)[3]; see Hogan v. Hogan, 549 So.2d 267, 271-74 (La.1989); State, Department of Social Services, Support Enforcement Services, ex rel. A.M. v. Taylor, 2000-2048 at p. 2, n. 2 & 16, 807 So.2d at 1158, n. 2 & 1168.

Excessive Award
Mr. Walden argues that the trial court should have deviated from the child support guidelines. He asserts that the amount of the award mandated by the guidelines is larger than necessary to care for two small children.
There is a rebuttable presumption that the amount of child support obtained by use of the guidelines is the proper amount of child support. La. R.S. 9:315.1(A); Campbell v. Campbell, 95-1711, p. 5 (La.App. 1 Cir. 10/10/96), 682 So.2d 312, 317. Moreover, the parental obligation to pay child support must be implemented within the body of law contained in the Louisiana Child Support Guidelines. La. R.S. 9:315.1; State in Interest of Travers, 28,022, p. 4 (La.App. 2 Cir. 12/6/95), 665 So.2d 625, 627. As such, the guidelines are intended to fairly apportion *520 between the parents the mutual financial obligation they owe their children, in an efficient, consistent, and adequate manner. State in Interest of Travers, 28,022 at p. 4, 665 So.2d at 627.
The legislation also provides that the court may deviate from the guidelines "if their application would not be in the best interest of the child or would be inequitable to the parties." La. R.S. 9:315.1(B). If the trial court deviates, it must "give specific oral or written reasons for the deviation, including a finding as to the amount of support that would have been required under a mechanical application of the guidelines and the particular facts and circumstances that warranted a deviation from the guidelines." Id.
In the present case, Mr. Walden produced absolutely no evidence, save his opinion, that the amount of the award was more than necessary to care for two small children, and should therefore be reduced. In the absence of any evidence to rebut the La. R.S. 9:315.1(A) presumption, Mr. Walden failed to carry his burden of proof to show that the application of the guidelines would not be in the best interests of the children or would be inequitable to him. Therefore, we see no abuse of discretion by the trial court in its application of the guidelines.

Adjustment for Time with Nondomiciliary Parent
Mr. Walden argues another ground for deviation. He believes that the trial court should have considered the amount of time the children are in his care and custody, and reduced the support accordingly.[4]
Louisiana Revised Statute 9:315.8(E), provides:
In cases of joint custody, the court shall consider the period of time spent by the child with the nondomiciliary party as a basis for adjustment to the amount of child support to be paid during that period of time. The court shall include in such consideration the continuing expenses of the domiciliary party.
Because the statute envisions the possibility of a deviation from the presumptively proper amount provided in the guidelines, Mr. Walden bears the burden of proving that the deviation is warranted.
The Louisiana Supreme Court, in Guillot v. Munn, 99-2132 (La.3/24/00), 756 So.2d 290, provided guidance on the application of La. R.S. 9:315.8(E). The Guillot court enunciated a three-prong test to determine whether a deviation from the support guidelines was justified based on the length of time the child spends with the nondomiciliary parent. The supreme court found it reasonable to conclude that a "typical" amount of visitation had necessarily been contemplated in the actual setting of the guidelines. Guillot, 99-2132 at p. 11, 756 So.2d at 298-99. Thus, for a deviation, the trial court must find that the visitation in question was non-typical or "extraordinary." Guillot, 99-2132 at p. 13, 756 So.2d at 300. Second, the court must consider whether the extra time spent with the nondomiciliary parent results in a greater financial burden on that parent and in a concomitant lesser financial burden on the domiciliary parent. Finally, the court must determine that the application of the guidelines in a particular case under consideration would not be in the best interest of the child or would be inequitable to the parties. This prong is necessary *521 to satisfy the deviation requirement of La. R.S. 9:315.1(B). Id. There is no "bright line" as to what constitutes extraordinary visitation as opposed to "typical" visitation. This determination falls within the great discretion of the trial court. Guillot, 99-2132 at p. 14, 756 So.2d at 300-301.
In the present case, Mr. and Mrs. Walden consented to a joint custody agreement setting forth the terms of visitation that provided, in part:
For every six days the father works, he is off two consecutive days (hereinafter referred to as "two-off-day period"). The father shall have physical custody every other "two-off-day period" .... The father is to have physical custody for two additional days during each month upon twenty four (24) hour notice to the mother ... with the proviso that the mother does not have any prior plans with the children ....
The plan also granted Mr. Walden specified holiday visitation and summer visitation of two weeks, plus all of the father's days off from work. Mrs. Walden agreed to remain flexible with the plan in order to facilitate Mr. Walden having the children on any additional days that his fluctuating work schedule allowed.
Such a plan can reasonably be termed a typical amount of visitation. Even if the trial court had found that Mr. Walden's visitation was extraordinary, Mr. Walden did not present any evidence that the shared custody arrangement resulted in an increased financial burden for him and a concomitant decreased financial burden for Mrs. Walden. Mr. Walden merely stated that when the children were with him, he spent money to feed and clothe them. Finally, Mr. Walden did not establish that the application of the support guidelines was not in his children's best interest or resulted in any inequity to him. Therefore, the trial court properly applied the guidelines. The evidence did not support a deviation based on the amount of time the children spend with Mr. Walden.

Child Care Costs
Lastly, Mr. Walden argues that the trial court should have reduced the support obligation based on proof at the hearing of lower child care costs. He also argues that the trial court should have deducted the tax credit available to the mother.
Louisiana Revised Statute 9:315.3 provides that "[n]et child care costs shall be added to the basic child support obligation." Net child care costs are defined as "the reasonable costs of child care incurred by a party due to employment or job search, minus the value of the federal income tax credit for child care." La. R.S. 9:315(7).
The appellate record contains incomplete information regarding Mrs. Walden's claim for child care costs. During the initial hearing, Mrs. Walden testified that the total amount she paid for child care was $279.50 per month. The trial court added the amount of $279.00 to the basic child support award.[5] At the second hearing, Mrs. Walden testified that the cost of Kameron's daycare was $215.00 per month. She further testified that Kennedi was now attending after-school care at St. John's, but she did not quantify that cost. Additionally, we note that the transcript makes absolutely no mention of the federal tax credit, nor did the trial court consider the credit. La. R.S. 9:315.3 and 9:315(7).
*522 Accordingly, the trial court shall hold a hearing to determine the child care costs and tax credit at the time of the hearing. The court shall then recalculate the award using net child care costs in conformity with the statute and the views expressed herein. See Lewis v. Lewis, 624 So.2d 1211-12 (La.1993); Buchert v. Buchert, 93-1819, p. 15 (La.App. 1 Cir. 8/26/94), 642 So.2d 300, 309.

DESIGNATION OF SCHOOL
In his second assignment of error, Mr. Walden contends that the trial court erred in denying his motion for an order requiring his daughter Kennedi to attend a public school instead of a private school.
While Mr. and Mrs. Walden were still married, they made a mutual decision to send their daughter Kennedi to St. John's, a private Catholic school, where she subsequently attended kindergarten. Pursuant to the divorce proceedings, Mr. and Mrs. Walden entered into a joint custody agreement that required them to jointly discuss and consider the schools that the children would attend. At the hearing on February 9, 2000, Mr. Walden testified that he did not object to Kennedi's attendance at St. John's. However, on June 28, 2000, Mr. Walden had his attorney send a letter to Mrs. Walden informing her that he no longer wanted Kennedi to attend a private school. Conversely, Mrs. Walden wanted Kennedi to remain at St. John's. The joint custody agreement, which required decisions regarding education to be discussed, also named Mrs. Walden as the domiciliary parent.
All major decisions made by the domiciliary parent, which would include choice of schools, are subject to judicial review upon motion of the non-domiciliary parent. La. R.S. 9:335(B)(3). In the judicial review, it is presumed that all major decisions made by the domiciliary parent are in the best interest of the child. Id.
In this case, Mr. Walden failed to overcome the presumption in favor of Mrs. Walden's choice that attendance at St. John's was in Kennedi's best interest. Mr. Walden produced absolutely no evidence about the available public school or any of its benefits. Nor did he offer any evidence indicating that Kennedi's attendance at St. John's was not in her best interest. Indeed, he even conceded that St. John's was a good environment for his daughter and that he believed she was doing well there. The legal presumption that Mrs. Walden's choice is in the best interest of Kennedi must prevail in the absence of evidence to the contrary. We therefore affirm the trial court's denial of Mr. Walden's rule to require Kennedi to leave her private school to attend a public school.

PRIVATE SCHOOL EXPENSE
In his third assignment of error, Mr. Walden argues that the trial court erred in including private school tuition in the basic child support obligation.
Expenses associated with private schooling are not automatically added to the basic child support obligation. La. R.S. 9:315.6(1); Campbell v. Campbell, 95-1711 at p. 10-11, 682 So.2d at 320. Louisiana Revised Statute 9:315.6(1) allows the addition of private school expenses to an award of child support by either agreement of the parties or by order of the court upon a finding that the private schooling is necessary to meet the particular educational needs of the child. Kelly v. Kelly, 99-2478, p. 12 (La.App. 1 Cir. 12/22/00), 775 So.2d 1237, 1245, writ denied, XXXX-XXXX (La.3/23/01), 787 So.2d 1001. Before private school tuition expenses should be mandated for inclusion in a child support award, some evidence must be presented to show a particular educational *523 need of the child is met by attendance at a private school. Id.; Valure v. Valure, 96-1684, p. 3 (La.App. 1 Cir. 6/20/97), 696 So.2d 685, 687. A particular educational need includes consideration of the child's history of attending private school and whether a continuation of the child's education in that setting is in the child's best interest. Valure, 96-1684 at p. 4, 696 So.2d at 688. However, a trial court's decision to add private school tuition expenses to the basic child support obligation will not be disturbed, unless it is an abuse of discretion. Valure, 96-1684 at p. 3, 696 So.2d at 687.
In the case before us, Mr. Walden admits that, while still married to Mrs. Walden, he agreed that Kennedi should attend St. John's private school when she began kindergarten. His agreement continued until June, 2000, when he had his attorney send a letter to Mrs. Walden stating that he no longer agreed that Kennedi should attend a private school.
Mrs. Walden gave ample testimony to support the trial court's addition of private school expenses to the child support award. She testified that St. John's administered a test to all kindergarten students at the end of the year. After testing, Mrs. Walden was notified that Kennedi scored poorly in both math and reading. The school informed Mrs. Walden that Kennedi's low scores made her eligible for its program providing special one-on-one tutoring by a teacher during the school day. Kennedi has since been receiving this tutoring on a weekly basis. Mrs. Walden further testified that she works until 5:00 p.m., but school ends at approximately 3:00 p.m. Kennedi would receive after-school care at St. John's that would be supervised by two teachers who assist the children with their homework or do other enrichment activities with them.
From our review of the record, we see no manifest error. In this case, there was sufficient evidence to support the trial court's finding that the addition of private school expenses was necessary to meet the particular educational needs of the child.

ALLOCATION OF CHILD SUPPORT
In his final assignment of error, Mr. Walden contends that the trial court erred in denying his motion to have the child support allocated proportionately to each child. He wants one-half of the award specifically allocated to Kennedi and the other half specifically allocated to Kameron.
"Prior to the enactment of the child support guidelines, child support judgments in Louisiana were either a `per child' award or an `in globo' award." Nations, Louisiana's Child Support Guideline: A Preliminary Analysis, 50 La. L.Rev. 1057, 1081 (1990). Now, under the guidelines, "child support awards in Louisiana are `in globo' awards." Id.; see La. R.S. 0:315.14. "Two basic theories underlying the design of the schedule of basic child support obligations are that certain household expenses considered in the cost of a child's support cannot simply be divided by the number of children in the home and thus equitably stated and that a smaller percentage of total income is spent on each child as a result of the economies of scale as the number of children in a family increases." Nations, Louisiana's Child Support Guideline: A Preliminary Analysis, 50 La.L.Rev. 1057, 1081-1082 (1990).
Appellant cites two of this court's cases, Colvin v. Colvin, 94-2143 (La.App. 1 Cir. 10/06/95), 671 So.2d 444, writ denied, 95-2653 (La.1/5/96), 667 So.2d 522, and Leonard v. Leonard, 615 So.2d 909 (La.App. 1 Cir.1993), for the proposition that the trial court may divide the basic child support *524 obligation by the number of children and allocate it accordingly. However, the cases that Mr. Walden cites involve the issue of split custody. In Colvin and Leonard, the custody of the three children was split, with the father receiving custody of one child and the mother receiving custody of the other two children. In both cases, it was necessary that the court split the child support obligation by the total number of children and determine what support was due to each parent. Here, however, both of the children at issue have lived, and will continue to live, with Mrs. Walden, the domiciliary parent. There is no split custody arrangement. Thus, in this particular case, we cannot say that the trial court erred in denying the request to allocate the support per child.

DECREE
For the foregoing reasons, we reverse the portion of the judgment that denied the request to reduce child support. The case is remanded for an evidentiary hearing on the issue of child care costs, and for the recalculation of child support. The new award is made retroactive to the date of judicial demand. However, Mr. Walden is ordered to continue making child support payments in the amount of $1,591.00 per month until the trial court renders a new judgment. See Buchert, 93-1819 at p. 18, 642 So.2d at 310. In all other respects, the judgment of the trial court is affirmed. The case is remanded to the trial court for further proceedings consistent with this opinion. The costs of the appeal are assessed equally to plaintiff-appellee and defendant-appellant.
REVERSED IN PART; AFFIRMED IN PART; REMANDED WITH INSTRUCTIONS.
LANIER, J., concurring in part and dissenting in part.
I respectfully dissent from the majority's holdings on (1) reduction of the child support obligation of Mr. Walden, (2) what constitutes voluntary underemployment and (3) what constitutes extraordinary overtime income. I concur in all other holdings that are not inconsistent with these dissenting opinions.

CORRECTNESS OF THE CHILD SUPPORT AWARD

The Statutory Law
Determining the gross income of the parents of a child is essential to the calculation of their basic child support obligation. La. R.S. 9:315.2. Income is defined in La. R.S. 9:315(6), in pertinent part, as follows:
(6) "Income" means:
(a) Actual gross income of a party, if the party is employed to full capacity; or
(b) Potential income of a party, if the party is voluntarily unemployed or underemployed. A party shall not be deemed voluntarily unemployed or underemployed if he or she is absolutely unemployable or incapable of being employed, or if the unemployment or underemployment results through no fault or neglect of the party. (Emphasis added.)
Gross income is defined in La. R.S. 9:315(4) as follows:
(4) "Gross Income" means:
(a) The income from any source, including but not limited to salaries, wages, commissions, bonuses, dividends, severance pay, pensions, interest, trust income, annuities, capital gains, social security benefits, worker's compensation benefits, unemployment insurance benefits, disability insurance benefits, and spousal support received from a preexisting spousal support obligation;

*525 * * *
(d) As used herein, "gross income" does not include:
* * *
(iii) Extraordinary overtime or income attributed to seasonal work regardless of its percentage of gross income when, in the court's discretion, the inclusion thereof would be inequitable to a party. (Emphasis added.)
La. R.S. 9:315.2B provides as follows:
If a party is voluntarily unemployed or underemployed, his or her gross income shall be determined as set forth in R.S. 9:315.9.
La. R.S. 9:315.9 provides, in pertinent part, as follows:

If a party is voluntarily unemployed or underemployed, child support shall be calculated based on a determination of his or her income earning potential, unless the party is physically or mentally incapacitated, or is caring for a child of the parties under the age of five years. (Emphasis added.)
The establishing or modifying of the basic child support obligation is provided for in the schedule found in La. R.S. 9:315.14A. La. R.S. 9:315.1A. La. R.S. 9:315.1A also provides, in pertinent part, as follows:
There shall be a rebuttable presumption that the amount of child support obtained by use of the guidelines set forth in this Part is the proper amount of child support.
La. R.S. 9:311A provides as follows:
An award for support shall not be reduced or increased unless the party seeking the reduction or increase shows a change in circumstances of one of the parties between the time of the previous award and the time of the motion for modification of the award.
La. C.C. art. 142 provides as follows:
An award of child support may be modified if the circumstances of the child or of either parent change and shall be terminated upon proof that it has become unnecessary.[1]

Interpretation of Statutes and Civil Code Articles (Law)
Special rules for interpreting the Revised Statutes are found in La. R.S. 1:1 et seq. La. R.S. 1:3 provides as follows:
Words and phrases shall be read with their context and shall be construed according to the common and approved usage of the language. Technical words and phrases, and such others as may have acquired a peculiar and appropriate meaning in the law, shall be construed and understood according to such peculiar and appropriate meaning.
The word "shall" is mandatory and the word "may" is permissive.
La. R.S. 1:4 provides as follows:
When the wording of a Section is clear and free of ambiguity, the letter of it shall not be disregarded under the pretext of pursuing its spirit.
*526 Louisiana Civil Code articles providing for the interpretation of laws are found at La. C.C. art. 9 et seq. See, in particular, La. C.C. arts. 9 and 11. La. C.C. art. 13 provides as follows:
Laws on the same subject matter must be interpreted in reference to each other.
The following jurisprudential rules for interpreting laws are found in Bunch v. Town of St. Francisville, 446 So.2d 1357, 1360 (La.App. 1 Cir.1984) are applicable: When a law or ordinance is clear and free from all ambiguity, it must be given effect as written ....
When interpreting a law (ordinance), the court should give it the meaning the lawmaker intended. It is presumed that every word, sentence or provision in the law was intended to serve some useful purpose, that some effect is to be given to each such provision, and that no unnecessary words or provisions were used. Conversely, it will not be presumed that the lawmaker inserted idle, meaningless or superfluous language in the law or that it intended for any part or provision of the law to be meaningless, redundant or useless. The lawmaker is presumed to have enacted each law with deliberation and with full knowledge of all existing laws on the same subject. The meaning and intent of a law is to be determined by a consideration of the law in its entirety and all other laws on the same subject matter, and a construction should be placed on the provision in question which is consistent with the express terms of the law and with the obvious intent of the lawmaker in enacting it. Where it is possible to do so, it is the duty of the courts in the interpretation of laws to adopt a construction of the provision in question which harmonizes and reconciles it with other provisions. A construction of a law which creates an inconsistency should be avoided when a reasonable interpretation can be adopted which will not do violence to the plain words of the law and will carry out the intention of the law maker....
When the expressions of a law are "dubious", the most effectual way of discovering the true meaning of the law is to consider the reason and spirit of it, or the cause which induced the lawmaker to enact it .... When a law is susceptible to two or more interpretations, that which affords a reasonable and practical effect to the entire act is to be preferred over one which renders part thereof ridiculous or nugatory .... If there is an irreconcilable conflict between the provisions of a law, only one provision can prevail.

Ordinary or Extraordinary Overtime Income
The majority correctly observes that "Mr. Walden maintains that the trial court was manifestly erroneous in failing to exclude his prior overtime income ...."
At the initial hearing on February 9, 2000, Mrs. Walden testified that Mr. Walden worked in excess of 70 hours every week during his entire period of employment. At the same hearing, Mr. Walden was asked directly by his attorney how many hours of work a week he averaged in 1999. Mr. Walden testified he worked between 75 to 80 hours every week. The trial court judge was not satisfied with Mr. Walden's testimony about the number of hours he worked and questioned him directly. The testimony is as follows:
BY THE COURT:
Q: That's not enough hours. It doesn't make the hours.
A: The hours for

*527 Q: Does that make 75 to 80 hours a week?
* * *
Q: So you're working 40 hours per week?
A: Over. Right. I work 40-40, plus forty more.
Q: So you work 80 hours a week?
A: Yes, sir.
Q: All right. It doesn't seem like the hours you gave us would add up to 80 hours a week. Does it?
Although Mr. Walden testified he worked between 75 and 80 hours every week, the check stub he submitted into evidence showing his year-to-date hours worked up to December 19, 1999, did not corroborate this testimony. It showed that in 1999 Mr. Walden worked an average of 15-16 hours of overtime a week for a total average of 55-56 hours of work per week. This is a difference of approximately 20-25 hours per week from his testimony. Mr. Walden's check stub shows that for the pay period ending on Dec. 19, 1999, he only worked an average of 14 hours per week overtime. The evidence is uncontradicted that Mr. Walden worked overtime every week for the entire period of his employment at Columbia, which was approximately two to two and a half years. This was the ordinary, and not the extraordinary, way he worked.
At the initial hearing, Mr. Walden stated he did not want to continue to work any overtime. He asserted his overtime income should not be used in calculating his child support obligation. The trial court judge denied his request.[2]
After the first judgment, Mr. Walden continued to work the same overtime for the following several months. However, in the middle of June 2000, Mr. Walden left his job as utility sacker and took a position as a utility operator in another department. Mr. Walden then filed a rule in August of 2000 requesting a reduction in his child support obligation.
At the hearing to modify the child support award conducted on September 13, 2000, Mr. Walden essentially testified that, although his new base pay was between 31 and 71[3] cents more an hour, he was actually making substantially less income because his new position offered less opportunity for overtime. He further testified that overtime at Columbia was not guaranteed.
When questioned about the overtime he was working in his new position, Mr. Walden testified as follows:
Q: All right. You're working about how many hours a week now?
A: Roughly, 40. Roughly 40 hours. Every now and then, you know, 44. If someone's on vacation, I may have to fill in a vacation spot, you know, at times.
Again, however, there is a discrepancy between his testimony and the documentary evidence. Mr. Walden's check stubs show the income from his new position and show he was actually working an average of 5.45 hours of overtime every week for a total of approximately 46 work hours per week.
The documentary evidence shows Mr. Walden went from working approximately 15-16 hours of overtime each week to working approximately 6 hours of overtime each week. This 10 hours of overtime *528 per week difference reduced Mr. Walden's monthly income approximately $1,800 to $2,000.
Ordinarily, the issue of whether Mr. Walden's overtime income is ordinary or extraordinary would be a question of fact subject to the manifest error rule of appellate review. However, as hereinafter set forth, the manifest error rule does not apply to this assignment of error. It is essential to determine what is ordinary overtime income and what is extraordinary overtime income when determining the child support obligation. The former may not be excluded from gross income as a matter of law when determining the child support obligation, whereas, the latter may be excluded as a matter of law in the discretion of the trial court.
Pursuant to La. R.S. 1:3, words and phrases in the Revised Statutes "shall be construed according to the common and approved usage of the language." See also La. C.C. art. 11.
Webster's II New College Dictionary 784 (2001) defines overtime as "n. (1) Time beyond an established limit, such as: a. Working hours in addition to those of the regular schedule. (2) Payment for additional work done outside of regular working hours. Adv. Beyond the established time limit, esp. that of the normal working day." According to BLACK'S LAW DICTIONARY 1105 (6th ed.1990), overtime is defined as "[a]fter regular working hours; beyond the regular fixed hours."
Webster's Third New International Dictionary 807 (1993) defines extraordinary as "more than ordinary: not of the ordinary order or pattern: going beyond what is usual, regular, common, or customary: not following the general pattern or norm." BLACK'S LAW DICTIONARY 586 (6th ed.1990) defines extraordinary as "[o]ut of the ordinary; exceeding the usual, average, or normal measure or degree; beyond or out of the common order, method, or rule; not usual, regular, or of a customary kind; remarkable; uncommon; rare; employed for an exceptional purpose or on a special occasion."
Income for the purpose of determining the child support obligation herein is statutorily defined in La. R.S. 9:315(6) as actual gross income if the party is employed to full capacity or potential income if the party is voluntarily underemployed. Gross income for the purpose of determining the child support obligation herein is statutorily defined in La. R.S. 9:315(4) as income from any source including salaries and wages.
According to the generally prevailing meanings of the words overtime and extraordinary, if the work conducted by Mr. Walden outside of his regular working hours (overtime) was out of the ordinary (beyond what was usual, regular, common, or customary for him), did not follow the general pattern or norm or was performed for an exceptional purpose or on a special occasion, then it was extraordinary. However, if the overtime was usual, regular, customary or normal, then it was ordinary.
The uncontradicted testimony was that Mr. Walden worked overtime and received overtime income every week for approximately two and half years, the entire term of his employment at Columbia prior to these proceedings. Such a fact renders Mr. Walden's overtime usual, regular, common, normal or customary; and, thus, not extraordinary according to the generally prevailing meaning of the word.
The trial court judge found as a fact that Mr. Walden's overtime income was ordinary overtime income. There is no contradictory evidence in the record to show that his overtime income was extraordinary. When there is no evidence to support a finding of fact, a question of law is *529 presented. Cf. La. C.C.P. art 966; State v. Tennant, 352 So.2d 629, 631 (La.1977); State in Interest of Cox, 461 So.2d 658, 661-662 (La.App. 1 Cir.1984), writ denied, 464 So.2d 1375 (La.1985). Thus, the trial court's ruling on this issue is not only correct as a matter of fact, it is correct as a matter of law. Conversely, the majority's contrary ruling is wrong as a matter of fact and law.
The majority's holding on what constitutes extraordinary overtime income conflicts with decisions from the Second and Third Circuits.
In the Third Circuit, what constitutes extraordinary overtime income was set forth in Montou v. Montou, 96-1463 (La. App. 3 Cir. 4/2/97), 692 So.2d 705. In Montou, the trial court did not include the overtime pay of an INS agent for the purposes of determining child support because of the uncertainty of the amount and the fact that there was no guarantee he would get overtime in the future. The Third Circuit reversed stating, although there was no guarantee of overtime, it was hardly a rarity and it was considered part of the job. Furthermore, the INS had instituted a plan whereby overtime was distributed evenly among the employees. The agent's income from the previous three years showed his overtime income was significant and continuous. The court held this clearly was not a scenario where the overtime could be considered "extraordinary"; and even though the agent's overtime income was decreasing, it was manifest error to exclude it from the calculation of his gross income.
Under analogous facts, the Second Circuit, in Douthit v. Douthit, 31-713 (La. App. 2 Cir. 3/31/99), 732 So.2d 616, found evidence showing the defendant had consistently worked substantial amounts of overtime for the preceding several years required a finding that such overtime was not extraordinary. The court noted the defendant was still eligible for overtime in his new position. Although the new position historically did not provide overtime, it did not make it completely unavailable.
In the instant case, the trial court found as a fact that Mr. Walden's overtime income was not extraordinary. The trial judge stated in his oral reasons for judgment that Mr. Walden had actually "adopted a certain standard of living, and his children by law are entitled to maintain that standard of living .... He doesn't have to continue working that many hours, and he can cut some of his expenses. But he can't cut his children's expenses because they no longer live with him."
Pursuant to La. R.S. 9:315(4)(a) and (d), extraordinary overtime income is not included in gross income for determining the child support obligation if the court in its discretion concludes that the inclusion of it would be inequitable to a party. Conversely, if the court in its discretion concludes that it is not inequitable to do so, it may include extraordinary overtime income in a gross income calculation. However, since Mr. Walden's overtime income was ordinary, and not extraordinary, it was properly included in determining gross income as defined in La. R.S. 9:315(4)(a). Further, because Mr. Walden's overtime income was not extraordinary, it was unnecessary for the trial court judge to exercise the discretion provided for in La. R.S. 9:315(4)(d)(iii). The majority committed legal error by using this provision of the law to support their holding.

Voluntary Underemployment Good or Bad Faith
Mr. Walden asserts the trial court committed "manifest error by holding that MR. WALDEN was voluntarily under-employed [sic] by taking a job with the same *530 company paying a higher hourly wage...."
The trial court initially fixed Mr. Walden's child support obligation pursuant to the schedule in La. R.S. 9:315.14A. Because of this, there is a rebuttable presumption that the initial amount fixed is the proper amount. La. R.S. 9:315.1A. Because Mr. Walden now seeks to modify this award due to a change of circumstances, the majority correctly observed that "[t]he party seeking the modification has the burden of proving a change in circumstances has occurred since the fixing of the prior award." The majority also correctly cites Stobart v. State, Department of Transportation and Development, 617 So.2d 880, 883 (La.1993) for the proposition that "[w]hen there are two permissible views of the evidence, the factfinder's choice between them cannot be manifestly erroneous."
La. R.S. 9:315(6)(b), 9:315.2B and 9:315.9 provide for the determination of the child support obligation when the obligor parent is voluntarily underemployed. Black's Law Dictionary 1575 (6th ed.1990) defines voluntary as "Unconstrained by interference; unimpelled by another's influence; spontaneous; acting of oneself.... Done by design or intention. Proceeding from the free and unrestrained will of the person. Produced in or by an act of choice. Resulting from free choice, without compulsion or solicitation." Voluntary is defined in Webster's II New College Dictionary 1238 (2001) as "1.a. Arising from one's own free will. b. Acting on one's own initiative. 2. Acting or serving in a designated capacity willingly and with no constraint or guarantee of reward. 3. Normally controlled by or subject to individual volition. 4. Capable of exercising will: VOLITIONAL. 5. Proceeding from impulse: SPONTANEOUS. 6. Law. A. Acting or done with no external persuasion of compulsion." Underemployed is defined in Webster's II New College Dictionary 1201 (2001) as "Partially or inadequately employed, esp. employed at a low-paying job for which one is overqualified."
Pursuant to La. R.S. 9:315(6)(b), "(a) party shall not be deemed voluntarily ... underemployed if he or she is absolutely unemployable or incapable of being employed, or if the ... underemployment results through no fault or neglect of the party." Pursuant to La. R.S. 9:315.9, a party is not considered underemployed if "the party is physically or mentally incapacitated, or is caring for a child of the parties under the age of five years."
Pursuant to La. R.S. 9:315(6)(b), 9:315.2B and 9:315.9, if it is determined as a fact that a obligor parent is voluntarily underemployed, his or her gross income shall be calculated based on a determination of his or her earning potential (rather than actual gross income).
When Mr. Walden changed his job at Columbia from utility sacker to utility operator, the change was voluntary on Mr. Walden's part. Mr. Walden intentionally made the change and it proceeded from his own initiative and free will. There is no evidence to the contrary in the record. Accordingly, the trial court's factual finding to that effect was correct as a matter of fact and law.
Thus, the only remaining question is whether Mr. Walden's voluntary change in jobs resulted in an underemployment. The dictionary definition of underemployment is cited above. What does and does not constitute underemployment is statutorily defined in La. R.S. 9:315(6)(b) and 9:315.9. Thus, a person is not underemployed if he or she (1) is physically or mentally incapacitated, (2) is caring for a child under the age of five years, (3) is absolutely unemployable, (4) is incapable of being employed, and (5) if the underemployment *531 results through no fault or neglect of the party. There is no evidence in the record showing that Mr. Walden fits in categories (1) through (4). Therefore, as a matter of fact and law, these categories are not relevant to the decision herein.
Thus, the only relevant category is whether Mr. Walden's change of jobs results from "no fault or neglect" on his part. The jurisprudence treats this category as a question of whether or not the obligor parent acted in good or bad faith. This is an issue of fact subject to the manifest error rule on appellate review. The building blocks of a trial court factual decision are (1) the weight of the evidence, (2) the credibility of the witnesses and (3) the inferences that may be made from the evidence presented. State in Interest of Cox, 461 So.2d at 660-661. It is hornbook law that the factfinder has a right to accept or reject, in whole or in part, the testimony of any witness.
In almost every case where the unemployment or underemployment was due to circumstances beyond the obligor parent's control, the court found good faith to exist. Hutto v. Kneipp, 627 So.2d 802, 805 (La. App. 2 Cir.1993). In Saussy v. Saussy, 93-1303 (La.App. 3 Cir. 6/15/94), 638 So.2d 711, the court found no voluntary underemployment resulted when the obligor parent was fired and the new employment allowed the obligor to spend more time with his children; the lower pay was believed to be temporary.
Courts have also generally found no underemployment and allowed a reduction (modification) when the employment change was voluntary, but was a short-term sacrifice that could lead to long term benefits. Hutto, 627 So.2d at 805. In Curtis v. Curtis, 34,317 (La.App. 2 Cir. 11/1/00), 773 So.2d 185, a father began new employment in a position that paid roughly the same hourly rate. In determining the father was in good faith, the court noted the new job would allow more time to spend with his family and the new position offered the possibility of achieving his goal of career advancement into an administrative position where he could utilize his specialized education. The court further noted only a slight change in salary resulted from the underemployment because the father's income only decreased from $3,486 per month to $3,120 per month.
In stark contrast, Mr. Walden's monthly income went from $6,211 to $4,216 per month. Such a difference in pay is not slight. Mr. Walden offered no evidence to show that the new position would increase the time he could spend with his children or would provide an opportunity for career advancement. Mr. Walden was not fired; he voluntarily changed jobs. The trial court, in its oral reasons, found Mr. Walden had "not established the benefit of taking this job versus the old job he had... he has not given any substantiation for the fact of taking another position where he makes less money."
Mrs. Walden testified that Mr. Walden never complained about working overtime prior to the institution of divorce proceedings. The majority observes that "[a]t the first hearing, Mr. Walden testified that he would no longer voluntarily work overtime because his family was no longer a unit and he was physically and mentally drained." If the trial judge believed Mrs. Walden's testimony and discredited part of Mr. Walden's testimony, he reasonably could infer that Mr. Walden refused to continue to work more overtime for the benefit of the family because of the institution of the divorce proceedings. This tends to show bad faith on his part. Conversely, if the trial judge believed all of Mr. Walden's testimony, he could have concluded that Mr. Walden reasonably decided to work less overtime for health *532 reasons (even though Mr. Walden presented no medical evidence to corroborate this). This shows good faith on Mr. Walden's part.
Mr. Walden testified at the initial hearing that he was voluntarily choosing not to work as much overtime. Especially telling are the following portions of Mr. Walden's testimony.
Q: Okay. Now as I understand you testimony today, you do work a lot, and that reflected in your W-2's. Are you telling us today that, now that you and your wife are separated, you just don't feel like you want to work that much because your family's not a unit anymore?
A: Right.
* * *
Q: Okay. That's a decision you're making as opposed to the company saying, "We've got no more overtime for you guys." You've made that decision.
A: Right.
Mr. Walden testified that his motivation for working the overtime was for the family goals of purchasing a home and automobiles. The majority observes that "[a]fter the family broke up, he [Mr. Walden] lost motivation to work so many extra hours for things that were no longer family goals." However, in my opinion, the trial court judge could have reasonably concluded that providing good housing and reliable transportation for the two children of the marriage was in the best interests of the children and were valid long term family goals. Although the children no longer live with Mr. Walden, they still have the same needs and this was recognized by the trial court judge.
Mr. Walden was questioned by the trial court judge about the amount of overtime available in his former job as follows:
BY THE COURT:
Q: Let me ask you, sir. The position you had before, if you still had that position now, would you still be making the same amount of overtime you were making before?
A: It depends on if the work's there.
Q: Well, that's what I'm asking you. Is the work there?
A: I'm not in that department. I work in a different department.
Q: I understand. So you don't know?
A: Yes, sir. I really don't know the you know, howhow that department is doing, you know, right now.
At the modification trial, Mr. Walden testified about his new position as follows:
Q: All right. Well, let me ask it this way. This job change that you've had, you've testified it's a promotion but you're not going to make as much money.
A: Well, I don't know that. I may.
Q: You may make as much as you were making last year?
A: I mean, the overtime is not guaranteed. If theyyou knowit'sI mean, I can take it a day-by-day thing. You know, I can't say "yes" or "no".
This testimony tends to show that Mr. Walden was in bad faith.
Mr. Walden did not say he wanted to work 10 less hours of overtime so he could spend more time with his children or assume more of the custodial duties entailed in raising them; instead, he positioned himself so he did not do as much work. While the majority is sympathetic to Mr. Walden's desire to work less hours per week, it should consider giving an equal amount of sympathy to Mrs. Walden who must work 40 hours per week, in addition to single-handedly caring for a two-year old and a six-year old. As a result of the majority's holding, Mrs. Walden's and the children's standard of living *533 will obviously suffer. The trial court judge focused on the best interests of the children and their standard of living in his decision. The trial court stated that although Mr. Walden was not compelled to work additional (ten) hours of weekly overtime, he would not be allowed to lessen his children's standard of living. Instead, he would have to cut some of his own personal expenses.
The facts in the instant case are analogous to those in Douthit v. Douthit, 31-713 (La.App. 2 Cir. 3/31/99), 732 So.2d 616. In Douthit, a father took a promotion as a foreman at his company that increased his hourly wage, but yielded an overall decrease of approximately $28,000 per year from loss of overtime. The father was not required to take the new position; and, although it might "open doors," there was no guarantee the promotion would produce future benefits. Similarly, Mr. Walden's promotion would allegedly cause a nearly $24,000 decrease in his yearly salary; yet, he did not testify as to any benefits that would justify this large reduction in pay. The result in this case should be the same as Douthit.
The trial court observed the appearance and demeanor of the witnesses. Mrs. Walden presented evidence tending to show that Mr. Walden was in bad faith; Mr. Walden presented evidence to show that he was in good faith. There were two permissible views of the evidence from which the trial judge could choose. The trial judge chose the view of the evidence that showed Mr. Walden acted in bad faith when he changed jobs after the divorce suit was filed and his initial child support obligation had been fixed. Pursuant to Stobart, this factual finding cannot be manifestly erroneous. The majority's ruling to the contrary is wrong.
Because Mr. Walden was in bad faith, he was voluntarily underemployed, and the trial court was required, by law, to calculate his child support obligation at the modification hearing based on his earning potential rather than his present actual gross income. The trial court determined that Mr. Walden's earning potential was the actual gross income he earned prior to the job change.
The trial court judgment refusing to modify Mr. Walden's child support obligation based on a change of circumstances is correct.

CONCLUSION
For the foregoing reasons, I respectfully dissent.
NOTES
[1] The Hon. Walter I. Lanier, Jr., Judge (retired), First Circuit Court of Appeals, is serving as judge pro tempore by special appointment of the Louisiana Supreme Court.
[2] La. R.S. 9:315 et seq. was amended by Acts 2001, No. 1082, § 1. This opinion refers to the law in effect at the time of the hearing of this matter.
[3] No good cause was shown why any modification granted should not be retroactive. If the mother is unable to make a lump sum repayment, and requests a determination by the trial court, the trial court may order that repayments be made by incremental deductions from the re-calculated child support over a period of time, or choose another method that would be fair to all parties.
[4] Although the trial court did not expressly address this argument in its oral reasons for judgment, it implicitly rejected this contention when it denied Mr. Walden's request for a reduction in his child support obligation.
[5] The court put $279.50 on the worksheet; however, it used the rounded figure of $279.00 in actually adding the total child support obligation.
[1] Acts 2001, No. 1082 amended Article 142 to provide as follows:

An award of child support may be modified if the circumstances of the child or of either parent materially change and shall be terminated upon proof that it has become unnecessary.
Comment2001 for this amendment states:
The amendment adds materially to describe the change in circumstances necessary to obtain a modification or termination of child support. The language overrules Stogner v. Stogner, 739 So.2d 762 (La.1999). See also R.S. 9:311.
[2] Mr. Walden did not appeal this judgment.
[3] Mr. Walden testified in September 2000, that his hourly wage as a utility sacker was $20.66 an hour. However, his check stub from December 1999, showed, at that time, he was making $20.26 an hour as a utility sacker. It is unclear whether Mr. Walden received an intervening raise or whether his testimony was incorrect.