879 So.2d 145 (2004)
Julie B. D'AQUILLA
v.
Samuel C. D'AQUILLA
No. 2003 CU 2212.
Court of Appeal of Louisiana, First Circuit.
April 2, 2004.
Writ Denied June 25, 2004.
*146 Brian J. Prendergast, Baton Rouge, Counsel for Plaintiff/Appellee Julie B. D'Aquilla.
Mark D. Plaisance, Baker, Counsel for Defendant/Appellant Samuel C. D'Aquilla.
Before: PETTIGREW, DOWNING, and McCLENDON, JJ.
MCCLENDON, J.
In this appeal, a father seeks modification of a custody award and a reduction in *147 his child support obligation to the mother. For the following reasons, we affirm.

FACTS AND PROCEDURAL HISTORY
The parties in this case, Julie B. D'Aquilla and Samuel C. D'Aquilla, were married on April 19, 1997, in East Feliciana Parish. Two children were born during their marriage, Sara Michael D'Aquilla, on August 26, 1998, and Maria Rose D'Aquilla, on October 20, 1999. At the time of her marriage to Mr. D'Aquilla, Ms. D'Aquilla also had two children from prior relationships, Rachel D'Aquilla, eleven years old, and Carley Allen, two and one-half years old, both of whom reside with her.[1]
Ms. D'Aquilla filed a petition for divorce on February 14, 2001, pursuant to LSA-C.C. art. 102. Following a telephone status conference on February 22, 2001, to set interim custody and support, the trial court granted Ms. D'Aquilla provisional custody and set temporary visitation and child support. Trial on the merits was scheduled for April 24 and 26, 2001. After the taking of evidence on April 24, 2001, the parties entered into a Stipulated Child Support Order on April 26, 2001, in which Mr. D'Aquilla agreed to pay to Ms. D'Aquilla $900.00 per month in child support. The parties then presented the remainder of their evidence on the matters of custody, visitation, and spousal support. On May 31, 2001, the trial court rendered a considered decree, awarding joint custody and designating Ms. D'Aquilla as the domiciliary parent. The trial court additionally fixed Mr. D'Aquilla's exercise of physical custody and interim periodic spousal support. The parties were also ordered to exchange holiday visitation proposals, in an effort to reach an agreement on a holiday visitation plan.
A judgment of divorce was signed on September 28, 2001.
Mr. D'Aquilla filed an answer and reconventional demand to the petition of divorce on August 31, 2001, making various requests including a change in custody and a change in the domiciliary parent. In response, Ms. D'Aquilla filed exceptions raising the objections of res judicata, no cause of action and no right of action. Prior to the completion of a hearing held on November 19, 2001 and December 13, 2001, the parties reached an agreement, and the trial court signed a stipulated judgment on March 4, 2002. The judgment addressed the holiday visitation plan, including two periods of two consecutive weeks in the summer, and also set forth a new schedule for the exercise of physical custody, granting Mr. D'Aquilla an extra day per week.
On February 5, 2003, Mr. D'Aquilla filed a Motion and Order to Change Custody, and, on March 11, 2003, Ms. D'Aquilla filed a rule to increase child support. Also, on March 11, 2003, Ms. D'Aquilla again filed exceptions raising the objections of no cause of action and no right of action, asserting that the motion and order to change custody did not allege that there had been a material change in circumstances regarding the children, or that a continuation of the current custody arrangement was so deleterious to the children as to justify a modification of the prior custody. Following a hearing on March 26, 2003 and April 25, 2003, the trial court granted Ms. D'Aquilla's exceptions raising the objections of no cause of action and no right of action. The trial court granted Mr. D'Aquilla fifteen days from March 26, 2003 to amend his Motion and Order to Change Custody. No amendment was filed. The trial court further *148 ordered that Mr. D'Aquilla pay child support to Ms. D'Aquilla in the amount of $1,104.25 per month and ordered that commencing on August 1, 2003, Mr. D'Aquilla pay one half of Sara's education expense at Silliman Academy, being $116.16 per month. It is from this judgment that Mr. D'Aquilla appeals.

ASSIGNMENTS OF ERROR
In his appeal, Mr. D'Aquilla asserts that:
1) Since his motion to change custody was based on a prior stipulated judgment, and not a considered custody decree, the trial court erred in holding him to the heavy burden set forth in Bergeron v. Bergeron, 492 So.2d 1193 (La.1986);
2) The trial court erred in failing to reduce his child support obligation in proportion to the amount of time the children spend in his custody;
3) The trial court erred in awarding private school tuition; and
4) The trial court erred in failing to stay that portion of its judgment ordering him to pay private school expenses.

MODIFICATION OF CUSTODY
In his first assignment of error, Mr. D'Aquilla asserts that the trial court erred in holding him to the edicts of Bergeron when a stipulated custody judgment modifies a considered decree.
The burden of proof on a party seeking to modify a prior permanent custody award is dependent on the nature of the original custody award. Custody awards are commonly made in two types of decisions. The first is through a stipulated judgment, such as when the parties consent to a custodial arrangement. The second is through a considered decree, wherein the trial court receives evidence of parental fitness to exercise care, custody, and control of a child. Evans v. Lungrin, 97-0541, pp. 12-13 (La.2/6/98), 708 So.2d 731, 738.
When the original custody decree is a stipulated judgment, a party seeking modification of custody must prove that there has been a material change in circumstances since the original decree and that the proposed modification is in the best interest of the child. Evans, 97-0541 at p. 13, 708 So.2d at 738. A party seeking to modify a considered decree of permanent custody, however, must satisfy the additional jurisprudential requirement of proving that continuation of the present custody is "so deleterious to the child as to justify a modification of the custody decree," or of proving by "clear and convincing evidence that the harm likely to be caused by the change of environment is substantially outweighed by its advantages to the child." Evans, 97-0541 at p. 13, 708 So.2d at 738, citing Bergeron v. Bergeron, 492 So.2d 1193, 1200 (La.1986). The paramount consideration in any determination of child custody is the consideration of the best interest of the child. LSA-C.C. art. 131. Major v. Major, 02-2131, p. 6 (La. App. 1 Cir. 2/14/03), 849 So.2d 547, 551; Shaffer v. Shaffer, 00-1251, p. 4 (La.App. 1 Cir. 9/13/00), 808 So.2d 354, 357, writ denied, 00-2838 (La.11/13/00), 774 So.2d 151.
In the instant case, it is undisputed that a considered decree was originally rendered by the trial court on the issue of custody. Mr. D'Aquilla argues, however, that because he sought to modify the stipulated judgment rendered on March 4, 2002, and not the considered decree of May 31, 2001, the trial court erred in holding him to the standard set forth in Bergeron. This argument is without merit.
The trial court determined that Mr. D'Aquilla failed to properly allege the Bergeron standard in the allegations made in *149 his Motion and Order to Change Custody. We find no error in the granting of the exceptions raising the objections of no cause of action and no right of action, as the original decree awarding custody was a considered decree. Accordingly, we find no abuse of the trial court's discretion in denying Mr. D'Aquilla's request to modify custody.

REDUCTION IN CHILD SUPPORT
In this assignment of error, Mr. D'Aquilla seeks a credit or reduction in his child support obligation to Ms. D'Aquilla. Essentially, Mr. D'Aquilla argues that the trial court should have deviated from the child support guidelines because of the amount of time Sara and Maria spend with their father.
Generally, an award of child support is entitled to great weight and will not be disturbed on appeal absent an abuse of discretion. Campbell v. Campbell, 95-1711, p. 4 (La.App. 1 Cir. 10/10/96), 682 So.2d 312, 316. Guidelines for child support obligations are legislatively set in LSA-R.S. 9:315.14. These amounts are presumptively proper. LSA-R.S. 9:315.1(A). Templeton v. Templeton, 00-0536, pp. 4-5 (La.App. 1 Cir. 12/22/00), 774 So.2d 1257, 1260.
The legislation also provides that the court may deviate from the guidelines "if their application would not be in the best interest of the child or would be inequitable to the parties." If the trial court deviates, it must "give specific oral or written reasons for the deviation, including a finding as to the amount of support that would have been required under a mechanical application of the guidelines and the particular facts and circumstances that warranted a deviation from the guidelines." LSA-R.S. 9:315.1(B). Walden v. Walden, 00-2911, p. 8 (La.App. 1 Cir. 8/14/02), 835 So.2d 513, 520.
Louisiana Revised Statute 9:315.8(E) provides:
In cases of joint custody, the court shall consider the period of time spent by the child with the nondomiciliary party as a basis for adjustment to the amount of child support to be paid during that period of time.
Because the statute envisions the possibility of a deviation from the presumptively proper amount provided in the guidelines, Mr. D'Aquilla bears the burden of proving that the deviation is warranted. Walden, 00-2911 at p. 8, 835 So.2d at 520.
The Louisiana Supreme Court case of Guillot v. Munn, 99-2132 (La.3/24/00), 756 So.2d 290, enunciated a three-prong test to determine whether a deviation from the support guidelines is justified based on the length of time the child spends with the nondomiciliary parent. The supreme court found it reasonable to conclude that a "typical" amount of visitation had necessarily been contemplated in the actual setting of the guidelines. Guillot, 99-2132 at p. 11, 756 So.2d at 298-99. Thus, for a deviation, the trial court must find that the visitation in question was non-typical or "extraordinary." Guillot, 99-2132 at p. 13, 756 So.2d at 300. Second, the court must consider whether the extra time spent with the nondomiciliary parent results in a greater financial burden on that parent and in a concomitant lesser financial burden on the domiciliary parent. Finally, the court must determine that the application of the guidelines in a particular case under consideration would not be in the best interest of the child or would be inequitable to the parties. Id.
The trial court determined that Mr. D'Aquilla did not meet the burden required to deviate from the support guidelines. The trial court determined in part *150 that Mr. D'Aquilla failed to show an increased financial burden on his part and a concomitant decrease in the expenses of Ms. D'Aquilla in connection with the exercise of the additional visitation. Recognizing that all three prongs as set forth in the Guillot case must be present, and finding no error in the trial court's determination that Mr. D'Aquilla failed to show an increased financial burden on his part and a decrease in Ms. D'Aquilla's expenses, we find it unnecessary to address the issue of extraordinary visitation or the best interest of the child. Therefore, we find no abuse of discretion by the trial court in its application of the guidelines.

PRIVATE SCHOOL TUITION
Mr. D'Aquilla's remaining assignments of error relate to private school tuition. Mr. D'Aquilla contends that the trial court erred in adding Sara's tuition at Silliman Academy to the basic child support obligation as no "particular educational need" was shown.
Expenses associated with private school are not automatically added to the basic child support obligation. Regarding the inclusion of educational expenses, LSA-R.S. 9:315.6 provides, in pertinent part:
By agreement of the parties or order of the court, the following expenses incurred on behalf of the child may be added to the basic child support obligation:
(1) Expenses of tuition, registration, books, and supply fees required for attending a special or private elementary or secondary school to meet the needs of the child.
(Emphasis added).
This statute was amended in 2001, removing the language requiring that a "particular educational need" to attend the special or private school be shown. The statute, as amended, is less restrictive to encompass generally "the needs of the child." This broader intent is illustrated by the comments to LSA-R.S. 9:315.6, which provide in pertinent part: "The needs of the child met by the special or private school need not be particular educational needs but may include such needs of the child as the need for stability or continuity in the child's educational program." Comments to LSA-R.S. 9:315.6.
The trial court's decision to include the private school tuition in a child support obligation will not be disturbed absent an abuse of discretion. Sobers v. Sobers, 98-0006, p. 2 (La.App. 1 Cir. 12/28/98), 724 So.2d 278, 279; Valure v. Valure, 96-1684, p. 3 (La.App. 1 Cir. 6/20/97), 696 So.2d 685, 687.
In this case, Sara previously attended a private pre-school in St. Francisville, at Mr. D'Aquilla's request and expense. There is no evidence, however, that the parties reached an agreement to send Sara to private school when she reached kindergarten age. Therefore, while Ms. D'Aquilla was not required to show a particular educational need for Sara to attend Silliman Academy, she was required to present evidence that an education at Silliman was necessary to meet Sara's needs.
Ms. D'Aquilla testified that Sara's two older half-sisters, with whom Sara has lived since birth, currently attend Silliman Academy. Ms. D'Aquilla's beauty shop is directly across the street from Silliman Academy, making it convenient if any of the children become ill, as well as for participation in extra-curricular activities. Further, all the girls take dance at Silliman. Ms. D'Aquilla also stated that she is familiar and happy with the educational program at Silliman.
*151 Under the facts of this case, we conclude that the trial court did not err in finding that an education at Silliman Academy was necessary to meet Sara's needs. While we recognize that there is no real history of school attendance to consider in this case, the legislature has recognized that the test for determining the parents' obligation to share in private school expenses is to consider the needs of the child. We believe this includes the emotional and social needs of the child, as well as the need for security and stability. Sara's older sisters have been attending Silliman and her mother is across the street. Because of Sara's young age and the turmoil resulting from the divorce of a child's parents, the emotional and social factors are important considerations. Based on the needs of the child and the facts of this case, we find that the trial court did not err in adding a portion of the private school tuition to the father's child support obligation. Accordingly, we will not disturb the trial court's decision, finding no abuse of discretion.
Because the issue of the domiciliary parent's choice of schools is not before us, but only the financial responsibility of the parties regarding private school tuition, we also find the trial court did not err in refusing to grant the stay.

CONCLUSION
For the foregoing reasons, the judgment of the trial court is affirmed. The costs of this appeal shall be borne by Mr. D'Aquilla.
AFFIRMED.
DOWNING, J., concurs.
NOTES
[1] Rachel's last name was legally changed to D'Aquilla during Ms. D'Aquilla's marriage to Mr. D'Aquilla, but Rachel is not Mr. D'Aquilla's daughter.