**NOT DESIGNATED FOR PUBLICATION**

**STATE OF LOUISIANA**

**COURT OF APPEAL**

**FIRST CIRCUIT**

**2019 CU 1694**

**ALLAN KEITH PAILLE, JR.**

**VERSUS**

**BEATRIZ TRINIDAD ACOSTA NEWELL AND JAMES KEITH NEWELL, JR.**

**Judgment Rendered:** �namely JUL 0 8 2020

* * * * * *

On Appeal from the Twenty-First Judicial District Court
In and for the Parish of Livingston
State of Louisiana
Docket No. 146300

Honorable Jeffrey C. Cashe, Judge Presiding

* * * * * *

Wyman E. Bankston
Livingston, Louisiana

Counsel for Plaintiff/Appellant,
Allan Keith Paille, Jr.


Nicole R. Dillon
April F. Jackson
Hammond, Louisiana

Defendant/Appellee,
Beatriz Trinidad Acosta Newell

* * * * * *

**BEFORE: WHIPPLE, C.J., GUIDRY, AND BURRIS,[1] JJ.**

---

[1] Judge William J. Burris, retired, serving *pro tempore* by special appointment of the Louisiana Supreme Court.

**BURRIS, J.**

In this custody dispute, the plaintiff, the child's father, asks this court to reverse the trial court's July 3, 2019 judgment denying his rule to modify custody. For the reasons that follow, we affirm.

### FACTS AND PROCEDURAL HISTORY

Allan Paille, Jr. and Beatriz Acosta (formerly, Beatriz Acosta Newell[2]) were never married but are the biological parents of J.K.A.P. ("Kash"),[3] a minor child born on July 22, 2014. The parties initially entered a consent judgment in January 2015, agreeing to share custody of Kash. For reasons not relevant here, the consent judgment was vacated in April 2015, an interim custody order was put in place, and the matter was set for a trial to determine custody.

Following trial on July 23, 2015, a considered decree was entered wherein the parties were awarded joint custody of Kash. Allan was awarded physical custody on the 1st, 2nd, and 4th weekends of each month and during the months of June and July, with Beatriz enjoying physical custody on alternating weekends during those months. Allan was also awarded physical custody of Kash on 60% of major holidays and all one-day holidays. No domiciliary parent was named. A judgment was signed on October 22, 2015.

In June 2016, Beatriz filed a motion to modify the October 2015 considered decree, requesting to be named domiciliary parent because the judgment failed to designate one as required by La. R.S. 9:335 and **Hodges v. Hodges**, 2015-0585, 181 So.3d 700 (La. 11/23/2015). She further averred that the October 2015 considered decree failed to allocate the time periods each party shall have physical custody during annual holidays. Because the judgment simply stated the holiday

---

[2] A judgment of divorce was rendered on April 6, 2016, terminating the marriage between Beatriz and her first husband, James Keith Newell, Jr., and returning Beatriz to the use of her maiden name, Acosta.

[3] The child's name, which was J.K.A.N., was changed to J.K.A.P. after paternity was established, confirming Allan as the child's biological father.

schedule as a percentage, Beatriz asserted that it failed to comply with the requirements of La. R.S. 9:335. Finally, Beatriz sought modification of the summer custody schedule "to better reflect the parties' employment schedules."[4]

In lieu of having the court decide these issues, the parties reached an agreement, memorialized in a consent judgment signed on October 6, 2016. Beatriz was designated as domiciliary parent of Kash, and a specific physical custody schedule for major holidays was established. Allan's weekend physical custody schedule established by the October 2015 considered decree remained unchanged. Although the considered decree provided that Beatriz shall enjoy physical custody on alternating weekends during June and July, the October 2016 consent judgment specifically awarded physical custody of Kash to Beatriz on the 2nd and 4th weekends during these months. Beatriz was also awarded one week of vacation in either June or July and was specifically granted custody from July 22-30, 2016.

Allan filed the instant rule to modify custody on January 31, 2018, purportedly seeking to modify the October 2016 consent judgment due to a change in circumstances. Allan alleged that, since October 2016, Beatriz moved in and out of her ex-boyfriend's home in Hammond, Louisiana, with whom she allegedly had an extramarital affair, and was currently living in another man's home in Springfield, Louisiana with two other women and another child. Allan further alleged that Beatriz has been employed at "numerous bars" since October 2016, spends minimal time with Kash, leaves him for extended periods with Allan, his family, and Beatriz's parents, and often fails to timely pick up the child when expected. To provide Kash with a "stable home environment," Allan sought to be named domiciliary parent, subject to periods of physical custody by Beatriz, such that Kash would primarily reside with Allan, his girlfriend of five years, and their

---

[4] Beatriz also sought to hold Allan in contempt of court for failing to adhere to the judgment concerning custody and child support. These issues are not relevant here.

3

young daughter. Allan maintained that the proposed change was in the best interest of child.

Testimony and evidence on Allan's rule to modify custody were presented to the trial court on January 17, 2019 and March 29, 2019. It was established that Beatriz planned to move to Pearl River, Louisiana with Kash to live with her boyfriend of five months, with whom she was expecting a child. Allan expressed concern that the move would further add to the instability in Kash's life, taking the child away from his immediate and extended family, his community, and his school. Allan also maintained that Beatriz allowed Kash to miss an excessive amount of school and failed to abide by the custody judgment. For these additional reasons not raised in his rule to modify, Allan asserted that a modification of custody was warranted.

In addition to disputing custody, the parties also disagreed concerning the applicable burden of proof. Allan argued that the October 2016 consent judgment, rather than the October 2015 considered decree, was before the court for modification since a domiciliary parent was not named until the second judgment. Therefore, according to Allan, the burden of proof applicable to considered decrees, set forth in **Bergeron v. Bergeron**, 492 So.2d 1193, 1196 (La. 1986), does not apply. Conversely, Beatriz maintained that the October 2015 considered decree controlled and that, to modify custody, the trial court must find that Allan satisfied the heightened **Bergeron** standard.

At the conclusion of the hearing, the trial court held that the **Bergeron** standard applied in light of the October 2015 considered decree and denied Allan's rule to modify custody. In its oral reasons for ruling, the trial court cited testimony from several witnesses that established that Allan maintains a rigorous work schedule, working long days, every day, for months at a time. As a result, Allan's mother and his girlfriend are often responsible for caring for Kash during Allan's custodial periods.

4

The trial court concluded that Allan is "not there" and must rely on "a bunch of other people to take on the parental responsibilities. . . ." Thus, the court reasoned that, if a modification was ordered, custody would, as a practical matter, be granted to Allan's girlfriend and his mother, not Allan. The court indicated that, but for Allan's absence, custody would likely have been modified. However, faced with the option of granting physical custody to the child's mother or "other people," the trial court concluded, "I'm going to pick Mom." A judgment in conformity with this ruling was signed on July 3, 2019.[5]

The trial court's application of the **Bergeron** standard and denial of Allan's rule to modify custody are the subject of Allan's appeal.

## LAW AND DISCUSSION

### *Standard of Review*

The primary consideration in a determination of child custody is the best interest of the child. This applies not only in actions setting custody initially, but also in actions to change custody. La. Civ. Code art. 131; **Mulkey v. Mulkey,** 2012-2709 (La. 5/7/13), 118 So.3d 357, 364. In determining the best interest of the child, the court shall consider all relevant factors, including those enumerated in La. Civ. Code art. 134. **Bents v. Bents**, 2015-1305 (La. App. 1st Cir. 9/9/16) 2016 WL 4718136, *6 (unpublished). The trial court is vested with broad discretion in deciding child custody cases; its determination is entitled to great weight and will not be disturbed on appeal absent a clear abuse of discretion. **Harang v. Ponder**, 2009-2182 (La. App. 1st Cir. 3/26/10), 36 So.3d 954, 960, writ denied, 2010-0926 (La. 5/19/10), 36 So.3d 219.

---

[5] On Allan's motions for contempt, the trial court found that Beatriz did not fail to inform Allan of Kash's school events in October and December 2018. However, the trial court found that Beatriz was in contempt for failing or refusing to return Kash to Allan on four occasions from June 2018 through January 2019. Beatriz was ordered to pay Allan's attorney's fees and costs in the amount of $5,118.60. The trial court's contempt ruling is not at issue in this appeal.

5

The trial court is in a superior position to ascertain the best interest of the child. It has a better opportunity to evaluate the credibility of witnesses, and its determination of a child's best interest is usually based heavily on factual findings, which may not be set aside on appeal absent manifest error or unless the findings are clearly wrong. **Id.; Rosell v. ESCO**, 549 So.2d 840, 844 (La. 1989). To reverse a fact finder's determination of fact, an appellate court must review the record in its entirety and (1) find that a reasonable factual basis does not exist for the finding and (2) further determine that the record clearly establishes that the fact finder is clearly wrong or manifestly erroneous. **Stobart v. State, DOTD**, 617 So.2d 880, 882 (La. 1993). However, where one or more legal errors interdict the fact-finding process, such as when the trial court applies an incorrect burden of proof, the appellate court must perform a *de novo* review of the record. **Burns v. Burns**, 2017-0343 (La. App. 1st Cir. 11/3/17), 236 So.3d 571, 573-574.

### *Applicable Burden of Proof*

Allan argues on appeal that the trial court legally erred by applying the **Bergeron** standard rather than the more relaxed burden applicable to modifications of consent judgments.

Custody awards are commonly made in two types of decisions. The first is through a stipulated or consent judgment, entered when the parties agree to a custodial arrangement. A party seeking to modify custody established by a consent judgment must prove that there has been a material change in circumstances since the original decree and that the proposed modification is in the best interest of the child. **D'Aquilla v. D'Aquilla**, 2003-2212 (La. App. 1st Cir. 4/2/04), 879 So.2d 145, 148, writ denied, 2004-1083 (La. 6/25/04), 876 So.2d 838; **Evans v. Lungrin**, 97-0541 (La. 2/6/98), 708 So.2d 731, 738.

The second type of custody determination is a considered decree, rendered after the trial court receives evidence of parental fitness to exercise care, custody, and control of a child. When a trial court has made a considered decree of

6

permanent custody, the party seeking a change bears the heavy burden of proving that continuation of the present custody is "so deleterious to the child as to justify a modification of the custody decree," or of proving by "clear and convincing evidence that the harm likely to be caused by the change of environment is substantially outweighed by its advantages to the child." **Howze v. Howze**, 2017-0358 (La. App. 1st Cir. 9/28/17), 232 So.3d 606, 609; **Bergeron**, 492 So.2d at 1200.

According to Allan, the October 2016 consent judgment superseded the October 2015 considered decree and was, therefore, the judgment he sought to modify. As Allan points out, the October 2016 consent judgment named a domiciliary parent for the first time and established additional periods of physical custody and a designated physical custody schedule for holidays. It also set forth extensive guidelines relating to the implementation of the custody judgment.

In response, Beatriz argues that the October 2016 consent judgment simply clarified the October 2015 considered decree and was intended to comply with new case law, particularly **Hodges**, 181 So.3d 700, to appoint a domiciliary parent as required by La. R.S. 9:335. She disputes that the October 2016 consent judgment superseded the October 2015 considered decree or changed its substance. Most significantly, Beatriz correctly asserts that the nature of the *original* custody award dictates the burden of proof a party must satisfy when seeking to modify a prior permanent custody award. **Harang**, 36 So.3d at 960. (Emphasis added.) It is undisputed that the original custody award establishing permanent custody of Kash was a considered decree.[6]

---

[6]    Both parties dedicate much of their appeal briefs to argument concerning whether the October 2016 consent judgment simply "tweaked" the October 2015 considered decree. Courts have noted that, as a practical matter, courts may "tweak" visitation schedules even when the evidence will not support modifying a prior considered decree. **Howze**, 232 So.3d at 610. This discussion is misplaced and would have more appropriately applied to consideration of the applicable burden of proof on Beatriz's June 2016 motion to modify, which led to the October 2016 consent judgment. We need not address this argument, having concluded that the nature of the original permanent custody determination controls the applicable burden of proof on Allan's present rule to modify custody.

In **D'Aquilla**, this court rejected the argument now being made by Allan. There, custody was originally established in May 2001 by a considered decree that awarded the parties joint custody and named the mother as domiciliary parent. **D'Aquilla**, 879 So.2d at 147. In March 2002, a consent judgment was entered wherein the parties agreed to a holiday and summer custody schedule and a new schedule for the exercise of physical custody, giving the father an extra day per week. The father subsequently filed a motion to modify custody. In response, the mother filed exceptions of no cause of action and no right of action. The trial court granted the mother's exception of no right of action and gave the father fifteen days to amend, which he did not do. Instead, he filed an appeal. **Id.** Like Allan, the father argued on appeal that, because he sought to modify the more recent March 2002 consent judgment, not the May 2001 considered decree, the trial court erred in holding him to the standard set forth in **Bergeron**. With minimal discussion, other than noting that a considered decree was originally rendered on the issue of custody, this court found this argument lacked merit. **Id.** at 148.

We, too, find Allan's argument and assignment of error concerning the applicable burden of proof lacks merit. The October 2015 considered decree established permanent custody of Kash; thus, the trial court correctly applied the **Bergeron** burden of proof.

### *Modification of Custody*

To modify custody, Allan was required to prove that the continuation of the present custody arrangement is so deleterious to Kash as to justify a modification of the October 2015 considered decree or of proving by clear and convincing evidence that the harm likely to be caused by the change of environment is substantially outweighed by its advantages to Kash. **Howze**, 232 So.3d at 609.

Allan's rule to modify custody was premised on the alleged lack of stability in Kash's life since the rendition of the October 2016 consent judgment, primarily

8

caused by Beatriz's decisions to move to and from various residences and the nature of her employment. We further note that, without objection, both parties expanded the pleadings by presenting evidence concerning issues outside the scope of Allan's rule to modify, particularly Beatriz's anticipated relocation to Pearl River, her alleged repeated failure to abide by the custody schedule, and Kash's school absences. See **Ramirez v. Hite**, 2015-1179 (La. App. 1st Cir. 12/23/15) 2015 WL 9466920, *2, n. 3 (unpublished), citing La. Code Civ. P. art. 1154 (finding no error in the trial court's expansion of the pleadings, over an objection, to include events subsequent to the date of filing of the motion to modify custody but relevant to the best interest of the child.)

Beatriz testified that she plans to move to Pearl River with Kash at the end of the academic school year. They will live with Jonathan Broom, Beatriz's boyfriend and the father of her unborn child whom she began dating in October 2018. Kash will have his own room in Jonathan's home, which Beatriz testified is located sixty-two miles from the child's current principal residence.[7] According to Beatriz, Jonathan puts the child first and Kash "looks up" to Jonathan. Similarly, Jonathan, a police officer with the New Orleans Police Department, testified that he and Kash are "friends" and their relationship gets better and better day-by-day. Although Beatriz does not have family in Pearl River, she testified that Jonathan's family lives in the area and will provide a stable support system. Consequently, Beatriz believes moving to Pearl River is in the child's best interest and that Kash would "absolutely" suffer if custody were modified so that Allan became the primary custodian.

Allan did not dispute any of the evidence offered by Beatriz concerning her anticipated move, her relationship with Jonathan, or Jonathan's relationship with

---

[7] Since Kash's proposed new principal residence is less than seventy-five miles from his principal residence at the time the most recent custody decree was rendered, Louisiana's relocation provisions do not apply. See La. R.S. 9:355.1, et seq.

9

Kash.[8] Instead, he asserted that it was in Kash's best interest to live with him, because Kash would live with his younger sister, with whom he shares a close bond, and would be near his paternal grandmother, who is active in Kash's life. Kash would have his own room in Allan's home and would attend kindergarten in the same school where he attended pre-k for the 2018-2019 school year. However, according to Beatriz, Kash's current school is a "C" rated school, whereas his anticipated school in Pearl River received a grade of "B."

Regarding Allan's assertion that Beatriz failed to provide stability for Kash due to the nature of her employment, testimony established that Beatriz is no longer working in bars and, instead, is enrolled in LSU's paralegal program. Further, both Beatriz and her father denied that she moved out of her parents' home in 2017 to live with her boyfriend in Hammond, and Allan presented no evidence to the contrary.

The evidence likewise did not support Allan's assertion that Beatriz spends minimal time with Kash, leaves him for extended periods, and often fails to timely pick up the child when expected. To the contrary, Beatriz's father testified that mother and son have a "very loving" relationship. They hold hands, "talk a lot," watch movies, do homework, go to the park, plan vacations, and eat together. Beatriz testified that Kash has been with her since he was born and is very "attached" to her. She attends Kash's school events and extracurricular activities and transports him to and from school. The evidence minimally established that Kash was tardy to school on several occasions and that Beatriz was late picking him up once.

Further, although Beatriz has asked Allan's mother to watch Kash on occasion, for Beatriz's convenience, the evidence as a whole establishes that

---

[8] Further, as Beatriz points out, the **Bergeron** standard requires proof that a continuation of the *present* custody arrangement is so deleterious to the child as to justify a modification of the custody decree, not an anticipated situation.

Beatriz does not rely on Allan's family for help with Kash out of fear that it will be used against her to support an argument that she's "trying to get rid of the child." Beatriz testified that her concern over the consequences of asking for help is also why she often took Kash with her to doctor's appointments, resulting in thirteen excused and ten unexcused absences during the 2018-2019 school year. Otherwise, Beatriz allows Allan's mother and girlfriend to have additional time with Kash, at their request, to provide Kash an opportunity to spend time with his father's family, including Allan's young daughter. Finally, even Allan admitted that Beatriz is not a bad mother and is active in Kash's life.

Conversely, the testimony established that Allan is not as involved in Kash's life due to his work schedule. Allan testified that he works ten to twelve hours a day, seven days a week, for approximately eight to nine months out of the year. For instance, Allan worked every day from August 2018 through March 2019, except for a two-week vacation between Christmas and New Year in 2018. Because of his demanding work schedule, Allan has been unable to attended any of Kash's school functions, has missed vacations with Kash, and is not typically present when physical custody is exchanged. Instead, Allan's girlfriend or his mother fulfill these tasks and care for Kash in Allan's absence. Thus, we find no manifest error in the trial court's factual conclusion that Allan is consistently absent during his custodial periods and relies on others to fulfill his parental responsibilities to Kash.

As the trial court noted, both parents have "issues." The evidence established that Beatriz failed to abide by the custody schedule on four occasions between June 2018 and January 2019. On two occasions, Beatriz refused to exchange physical custody of Kash at the designated time because she wanted Kash to attend events with her family. In December 2018, Beatriz incorrectly believed that she and Allan informally agreed to deviate from the holiday schedule, as they had in the past, and did not deliver Kash to Allan at the designated time.

11

Finally, she deprived Allan of physical custody of Kash on Martin Luther King Day in 2019, because she believed the parties had changed the one-day holiday schedule. As the trial court pointed out, Beatriz erred by relying on her memory of a conversation, rather than the terms of the written judgment. However, we note that Beatriz texted Allan to confirm her understanding of the custody schedule, and Allan did not advise her that she was wrong, believing she would not listen to him.

Louisiana Civil Code art. 136.1 recognizes that a child has a right to time with both parents; thus, "[n]either parent shall interfere with the visitation, custody or time rights of the other unless good cause is shown." Louisiana Revised Statute 9:346 governs actions for the failure to allow visitation, custody, or time rights of a parent pursuant to a court-ordered schedule, judgment, or award. Subsection (H) provides, "[a] pattern of willful and intentional violation of this Section, without good cause, *may* be grounds for a modification of a custody or visitation decree." (Emphasis added.) Whether a parent's actions justify a modification of custody for violation of a custody schedule is left to the discretion of the trial court.

At the conclusion of the hearing on Allan's rule to modify, the trial court reprimanded Beatriz for violating its orders, cautioned her against continuing to deviate from the custody schedule, and found her in contempt. The trial court, who was familiar with the parties and the history of the case, was in the best position to evaluate Beatriz's credibility, including the sincerity of her interest and willingness to co-parent with Allan and the veracity of her denial that she kept Kash from Allan "out of spite."[9] We find no abuse of discretion in the trial court's

---

[9] The history of the case includes Allan's prior efforts to hold Beatriz in contempt for allegedly violating the terms of the custody judgment.

refusal to modify custody due to Beatriz's failure to abide by the custody judgment.[10]

The trial court also noted that Beatriz has made some "very bad decisions," presumably referring to her romantic relationships and two failed marriages by the age of twenty-six. However, Allan acknowledged, and the trial court found, that Kash is not in danger while in Beatriz's care. Allan offered no evidence to establish how Beatriz's decisions or lifestyle negatively affected Kash. See **Burns**, 236 So.3d at 576 (modification of consent judgment was not warranted where the father disapproved of the mother's boyfriend, with whom she and the children resided, and lifestyle but offered no evidence that her actions had any effect on the children. The father did not establish that the children were neglected, were not cared for when in the mother's custody, were being negatively influenced, or were in any danger.) Beatriz testified that she never lived with her second husband, who is in the military and was stationed out-of-state then overseas, and Kash believed another romantic interest was "mommy's friend." Further, Allan does not assert that Jonathan is a bad influence on Kash or that he is an otherwise undesirable presence in Kash's life. In fact, due to Allan's work schedule, he has not met Jonathan.

Allan offered no evidence to prove that a continuation of the present custody arrangement would be deleterious in any way to Kash or to show that the harm likely to be caused if Allan was named primary custodial parent is substantially outweighed by its advantages to Kash. The evidence established nothing more than Allan's preference for Kash's living arrangements and fell woefully short of

---

[10] Compare **Jaligam v. Pochampally**, 2016-0249 (La. App. 4th Cir. 12/7/16), 206 So.3d 298, 304-305, writ denied, 2017-0255 (La. 3/13/17), 216 So.3d 804, wherein the trial court modified custody pursuant to La. R.S. 9:346(H) and upon finding modification was in the best interest of the child. The mother deprived the father of 206 days of physical custody over two years. The mother's reasons were generally that the children had extracurricular activities, that her sciatica pain prevented her from driving, or that the father did not reimburse her for mileage. The Fourth Circuit found no error in the trial court's decision to modify custody pursuant to La. R.S. 9:346(H), considering the "overwhelming evidence" of contempt on the part of the mother.

the requisite **Bergeron** burden of proof. Thus, we find the trial court did not abuse its broad discretion by denying Allan's rule to modify custody.

## CONCLUSION

For the foregoing reasons, the trial court's July 3, 2019 judgment denying the plaintiff/appellant's rule to modify custody is affirmed. Costs of this appeal are assessed against the plaintiff/appellant, Allan Paille, Jr.

**AFFIRMED.**