# STATE OF LOUISIANA
## COURT OF APPEAL
## FIRST CIRCUIT

## 2025 CU 0183

### ASHLEY DEBOSE DAVIS

### VERSUS

### PHILIP JACOBY DAVIS

Judgment Rendered: **AUG 0 1 2025**

\* \* \* \* \* \* \*

On Appeal from the 21st Judicial District Court
In and for the Parish of Livingston
State of Louisiana
Trial Court No. 175143

The Honorable Jeffrey C. Cashe, Judge Presiding

\* \* \* \* \* \* \*

Sherman Q. Mack
C. Glenn Westmoreland
Celeste H. Shields
Albany, Louisiana

Attorneys for Plaintiff/Appellee
Ashley DeBose Davis


NaTashia Carter Benoit
Baton Rouge, Louisiana

Attorney for Defendant/Appellant
Philip Jacoby Davis

\* \* \* \* \* \* \*

**BEFORE: PENZATO, STROMBERG, AND FIELDS, JJ.**

**PENZATO, J.**

Philip Jacoby Davis appeals a trial court judgment awarding custody and child support to Ashley DeBose Davis (Ms. DeBose). We affirm.

<u>**FACTUAL AND PROCEDURAL HISTORY**</u>

Mr. Davis and Ms. DeBose were married in 2009, and had three children. On August 22, 2022, Ms. DeBose filed a petition for divorce, requesting joint custody of the children and that she be designated the domiciliary parent, with reasonable visitation to Mr. Davis. She further requested that child support be set. The parties appeared before the hearing officer on October 12, 2022 and entered into an interim judgment to share custody of the children on a week to week basis.

On October 19, 2022, Mr. Davis filed an answer and reconventional demand to the petition for divorce filed by Ms. DeBose. Mr. Davis sought joint custody with him being designated the domiciliary parent, and also sought child support. These matters were set to be heard by the trial court on January 11, 2023. On April 13, 2023, Mr. Davis filed a rule for contempt and to reset custody, indicating therein that the parties had met on January 11, 2023, but had been unable to reach a written stipulation. Mr. Davis requested the matters raised in his answer and reconventional demand and set for January 11, 2023, be reset. With regard to the contempt, Mr. Davis alleged Ms. DeBose refused to allow the oldest child, A.D., to participate in her scheduled extracurricular activities during Ms. DeBose's periods of physical custody. Mr. Davis's rule was set for May 31, 2023. The parties appeared before the trial court on May 31, 2023, and entered into a stipulated judgment that pending trial and/or further written agreements of the parties, the stipulated judgment of October 12, 2022 would remain in effect. The May 31, 2023 judgment additionally addressed issues involving the children's participation in sports, ordering that each of the minor children was allowed to participate in up to two sports at the same time and that any additional sport a child was allowed to participate in would not impede

2

the other parent's time unless that sport was agreed to in writing by both parents. The stipulated judgment further ordered that prior to enrolling/tryouts for a sport, all information must be submitted to the other parent in writing and there must be a telephone discussion within 72 hours regarding how the sport could impact the custodial times so that informed decisions could be made regarding the participation in the sport.

On June 23, 2023, the trial court issued a scheduling order setting the case for a bench trial on October 19, 2023. Upon motion of Ms. DeBose, the October 19, 2023 trial was continued and reset for a pretrial conference on May 14, 2024, in order to select a new trial date. On January 23, 2024, the trial court issued a scheduling order setting the case for a bench trial on May 14, 2024. The order indicated that counsel for the parties were present on January 10, 2024, "telephonically, via email, or in chambers."[1] On January 23, 2024, Ms. DeBose filed a motion to reset spousal and child support, which was then set for hearing on March 6, 2024. The parties' counsel appeared on that date, and the support matters were reset to the trial date of May 14, 2024.

On April 25, 2024, counsel for Mr. Davis filed an unopposed motion to withdraw as counsel of record, indicating therein that the matter was scheduled for trial on May 14, 2024. In the motion, counsel for Mr. Davis asserted that Mr. Davis had failed to comply with the financial terms of the attorney/client contract, that she had notified Mr. Davis in writing that she would seek to withdraw unless he became compliant with the contract by April 19, 2024, and that there had been no opposition or contractual compliance made by Mr. Davis as of the date of filing. By order signed April 30, 2024, counsel for Mr. Davis was withdrawn as counsel of record.

---

[1] Counsel for Ms. Debose was present in open court on that date to obtain the parties' divorce.

3

The matter came for hearing on May 30, 3024.[2] Both parties testified and Ms. DeBose introduced evidence. In addition, Mr. Davis's father testified. At the conclusion of the hearing, the trial court issued its ruling, naming Ms. DeBose as the domiciliary parent for all three children; continuing the physical custody of A.D. on a week to week schedule; awarding physical custody of the two younger children to Ms. DeBose, with the children spending alternating weekends with Mr. Davis and an equal division of time for all the children during the summer; and awarding Ms. DeBose child support in an amount to be determined based upon the statutory child support guidelines.

On July 2, 2024, the trial court signed a judgment in accordance with its oral rulings on custody and incorporating the child support as calculated using the statutory guidelines. Mr. Davis appeals.

## ASSIGNMENTS OF ERROR

Mr. Davis assigns as error the following:

1. The trial court erred in not granting a continuance;

2. The trial court erred in impermissibly expanding the pleadings without having due process of law;

3. The trial court erred in its application of the best interest factors in its award of domiciliary parent and award of the physical custody schedule; and

4. The trial court erred in its duty to properly calculate child support.

## LAW AND DISCUSSION

**Assignment of Error Number 1**

In his first assignment of error, Mr. Davis contends the trial court abused its discretion in failing to grant his requested continuance to retain new counsel.

---

[2] At the May 30, 2024 hearing, the parties indicated that they had appeared on May 14, 2024, at which time Mr. Davis moved to continue the matter because his attorney had withdrawn. The trial court granted the continuance and reset the matter for May 30, 2024. The record does not contain a motion to continue or an order resetting the matter for May 30, 2024.

4

Louisiana Code of Civil Procedure art. 1601 provides that a continuance may be granted "if there is good ground therefor."[3] The trial court must consider the particular facts of a case when deciding whether to grant or deny a continuance. The trial court should consider the diligence and good faith of the party seeking the continuance and other reasonable grounds. The trial court may also weigh the condition of the court docket, fairness to the parties and other litigants before the court, and the need for orderly and prompt administration of justice. *St. Tammany Parish Hospital v. Burris*, 2000-2639 (La. App. 1 Cir. 12/28/01), 804 So. 2d 960, 963.

Generally, a litigant whose lawyer withdraws at or near trial may be entitled to a continuance to employ another attorney. However, because the defendant's desire to have the case against him tried is also a factor, the claimant is not entitled to indefinite continuances simply because he is unable to secure counsel. *Howard v. Lee*, 50,366 (La. App. 2 Cir. 1/13/16), 185 So. 3d 144, 149. The trial court has great discretion in granting or denying a continuance under La. C.C.P. art. 1601, and its ruling should not be disturbed on appeal in the absence of a clear abuse of discretion. *St. Tammany Parish Hospital*, 804 So. 2d at 963.

As noted above, the trial court signed an order granting Mr. Davis's attorney's motion to withdraw on April 30, 2024. When the parties appeared for trial on May 30, 2024, Mr. Davis indicated that he wished to have an attorney present to represent him. He stated that he had spoken with two attorneys, both of whom requested more time. The trial court indicated it was willing to continue the matter until July 16, 2024, with the parties continuing to share custody of the children on a week to week

---

[3] Conversely, La. C.C.P. art. 1602 mandates that a continuance be granted if at the time a case is to be tried, the party applying for the continuance shows that he has been unable, with the exercise of due diligence, to obtain evidence material to his case; or that a material witness has absented himself without the contrivance of the party applying for the continuance. Mr. Davis does not contend, nor does the record reveal, that there were any peremptory grounds for a continuance in this case.

basis. The trial court clarified that during this time, each parent would exercise their weekly visitation without interference from the other parent. Mr. Davis stated that he did not agree to this condition, and would "just stay with today." The trial court asked Mr. Davis whether that meant he wanted to go forward with the trial that day, to which Mr. Davis replied, "Yes, sir."

As noted above, the trial court was willing to grant Mr. Davis's requested continuance. Mr. Davis elected to proceed with the hearing set for that day. The trial court did not abuse its discretion by proceeding with the hearing at Mr. Davis's request. This assignment of error lacks merit.

**Assignment of Error Number 2**

In his second assignment of error, Mr. Davis contends that the only issue set for trial on May 30, 2024 was spousal and child support, and the trial court erred in proceeding to hear and decide the custody matter.

As noted above, the parties entered into an interim judgment to share custody on a week to week basis in October 2022, which was continued by agreement in May 2023. All matters pending in the parties' petitions for divorce, *i.e.*, custody and support, were set for hearing on October 19, 2023, and thereafter reset for a pretrial conference on May 14, 2024 to set a trial date. On January 23, 2024, the trial court issued a scheduling order setting the "above entitled and numbered cause" for trial on May 14, 2024. A separate order set the support matters for hearing on March 6, 2024, at which time the parties appeared, and the support matters were continued to the trial date of May 14, 2024. Thus, the record reflects that both custody and support matters were set for the same date, May 14, 2024. The matters were reset for May 30, 2024. At the hearing on May 30, 2024, the trial court initially asked whether the hearing was "just interim spousal support." Counsel for Ms. DeBose clarified that both custody and support (spousal support and child support) were set for that day, with Mr. Davis ultimately electing to proceed because he did not agree

6

with the trial court's instruction that neither parent could interfere with the other parent's weekly period of custody. His desire to go forward with the May 30, 2024 hearing was based upon issues involving custody, not support, which contradict his argument on appeal that he was not aware the custody matters were set for that date. Moreover, he appeared on May 30, 2024 with a witness, his father, whom he called to testify in connection with the custody issues. Mr. Davis clearly was aware of and elected to proceed on all matters on May 30, 2024. This assignment of error lacks merit.

**Assignment of Error Number 3**

In his third assignment of error, Mr. Davis contends the trial court abused its discretion by designating Ms. DeBose as the domiciliary parent of the three children and the primary custodian of the two younger children. Mr. Davis argues the parties should have been awarded shared physical custody with no designation of a domiciliary parent.

Every child custody case must be viewed in light of its own particular set of facts and circumstances. *Underwood v. Underwood*, 2021-0277 (La. App. 1 Cir. 10/21/21), 332 So. 3d 128, 139. The trial court is in the best position to ascertain the best interest of the child given each unique set of circumstances. Accordingly, a trial court's determination of custody is entitled to great weight and will not be reversed on appeal unless an abuse of discretion is clearly shown. *Yepez v. Yepez*, 2021-0477 (La. App. 1 Cir. 12/22/21), 340 So. 3d 36, 41. Additionally, in most child custody cases, the trial court's determination is based heavily on factual findings. *Id.* It is well settled that a court of appeal may not set aside the trial court's findings in the absence of manifest error or unless those findings are clearly wrong. See *Rosell v. ESCO*, 549 So. 2d 840, 844 (La. 1989). If the findings are reasonable in light of the record reviewed in its entirety, an appellate court may not reverse those

findings even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. *Id.*

The paramount consideration in any determination of child custody is the best interest of the child. See La. C.C. art. 131; *Evans v. Lungrin*, 97-0541 (La. 2/6/98), 708 So. 2d 731, 738. Louisiana Revised Statutes 9:335(A)(2)(b) provides that to the extent it is feasible and in the best interest of the child, physical custody of the children should be shared equally. Louisiana Civil Code art. 134(A) directs the trial court to consider all relevant factors in determining the best interest of the child, including:

(1) The potential for the child to be abused, as defined by Children's Code Article 603, which shall be the primary consideration.

(2) The love, affection, and other emotional ties between each party and the child.

(3) The capacity and disposition of each party to give the child love, affection, and spiritual guidance and to continue the education and rearing of the child.

(4) The capacity and disposition of each party to provide the child with food, clothing, medical care, and other material needs.

(5) The length of time the child has lived in a stable, adequate environment, and the desirability of maintaining continuity of that environment.

(6) The permanence, as a family unit, of the existing or proposed custodial home or homes.

(7) The moral fitness of each party, insofar as it affects the welfare of the child.

(8) The history of substance abuse, violence, or criminal activity of any party.

(9) The mental and physical health of each party. Evidence that an abused parent suffers from the effects of past abuse by the other parent shall not be grounds for denying that parent custody.

(10) The home, school, and community history of the child.

(11) The reasonable preference of the child, if the court deems the child to be of sufficient age to express a preference.

(12) The willingness and ability of each party to facilitate and encourage a close and continuing relationship between the child and the other party, except when objectively substantial evidence of specific abusive, reckless, or illegal conduct has caused one party to have reasonable concerns for the child's safety or well-being while in the care of the other party.

(13) The distance between the respective residences of the parties.

(14) The responsibility for the care and rearing of the child previously exercised by each party.

The weight to be given each factor is left to the discretion of the trial court. *Morgan v. Morgan*, 2023-0945 (La. App. 1 Cir. 4/19/24), 390 So. 3d 317, 330, writ denied, 2024-00639 (La. 9/4/24), 391 So. 3d 1056. The trial court is not bound to make a mechanical evaluation of or provide a literal articulation of all of the factors and is not required to specifically explain its weighing and balancing of the factors. Rather, the trial court should decide each case on its own facts and circumstances in light of Article 134 and other relevant factors. *Id.*

Ms. DeBose testified that she and Mr. Davis were both teachers, and during the marriage, they divided the care for the children equally. Ms. DeBose testified that on August 16, 2022, Mr. Davis left the family home in Denham Springs with the oldest child, A.D. According to Ms. DeBose, she received a text from Mr. Davis the next morning indicating that A.D. would be attending Central Middle School in East Baton Rouge Parish, rather than Westside Middle School, where she had been attending and which was in the parties' district, based on their address. Ms. DeBose confirmed that Mr. Davis did that without any input or notice to her. She testified the parties appeared in court on October 12, 2022, and entered into an interim stipulation with regard to the custody of the children. According to Ms. DeBose, the week to week schedule set forth in the interim stipulation was not working. She testified that on her weeks with the children, Mr. Davis picked up A.D. for school and for activities that he enrolled her in with no communication as to the time and without Ms. DeBose's agreement. Ms. DeBose testified that A.D. was involved in

9

softball, basketball, track, soccer, and volleyball, and while Ms. DeBose supported A.D.'s school sports, her issue was travel ball sports, which were a financial strain and interfered with the other children's activities.

Ms. DeBose testified that the week to week schedule was also causing issues with the two younger children. According to Ms. DeBose, her son was suffering from anxiety, and both the younger children were having behavioral problems as a result of the inconsistency in their schedules. She recognized that if she were designated as the domiciliary parent, she would have to communicate with Mr. Davis regarding the children's schedules and activities, and she indicated she was willing to do so. Ms. DeBose further indicated that she did not believe shared custody was ever going to work because there was no communication with Mr. Davis.

Finally, Ms. DeBose testified as to her income and expenses. She testified that for calendar year 2022 she earned $38,722.00, and that she got a raise and was making $45,000.00 at the time of the hearing. In connection with her testimony, a paystub for the period ending 10/31/2023 was introduced into evidence.[4] Ms. DeBose testified she was trying to purchase a home because the family home was in foreclosure.

Mr. Davis testified that he removed A.D. from the home on August 16, 2022 because of mental and physical abuse directed toward A.D. by Ms. DeBose. He testified that he contacted the Louisiana Department of Children and Family Services (DCFS) on two occasions regarding Ms. DeBose. Both reports were investigated by DCFS and found to be invalid. Mr. Davis agreed that the week to week schedule was not working, and that he saw a change in the younger two children's behavior at school. He testified that he was concerned with his younger daughter's health. Mr. Davis testified that he wanted the children to be involved in

---

[4] Ms. Debose's paystub showed gross monthly pay of $3,987.08, which is the amount listed on Ms. Debose's financial affidavit, also introduced into evidence. Ms. Debose testified she was paid over a twelve-month period.

10

activities, and he has paid for clothes and fees for them to participate in sports. He further testified that he would like to remove the children from their current schools and enroll them in Central schools, because he believed they were better academically.

Mr. Davis testified that after moving out of the family home in Denham Springs, he moved into another house he owned in Denham Springs on Mary Lee Drive. He testified that he bought the house on Mary Lee Drive right after A.D. was born, and rented it to his parents when he and Ms. DeBose moved to the larger family home. Mr. Davis testified the mortgage on the Mary Lee Drive house was around $1,100.00 per month, and his mother paid around $500.00 of that per month. According to Mr. Davis, his parents still lived at the Mary Lee Drive house, which has three bedrooms. When the children stayed with him, he shared a room with his son, each of his daughters had their own room, and his mother slept on the sofa. Mr. Davis testified that he also rented a house in Zachary for $2,500.00 per month. Mr. Davis further testified that he stopped paying the monthly mortgage on the family home about a year after he left the home.

Mr. Davis acknowledged that in 2023, his gross income was $62,773.62. According to Mr. Davis, he had two different jobs that year. He stated that he changed jobs in August, and his net pay was now approximately $3,000.00 per month. When asked how he could afford his monthly expenses when his net take-home pay was $3,000.00 per month, Mr. Davis indicated he did not know, but he would try to work, possibly at a summer camp. According to Mr. Davis, he would make it work.

Mr. Davis called his father, Young Davis, III, to testify. Young Davis testified that both Mr. Davis and Ms. DeBose were excellent parents. He agreed that the current schedule was not good for the children.

11

Upon conclusion of the testimony, the trial court ruled on the matters before it. With regard to custody, the trial court named Ms. DeBose as the domiciliary parent for all three children. The trial court continued the physical custody of A.D. on a week to week schedule, but as to the two younger children, it awarded custody to Ms. DeBose, with the children spending alternating weekends at Mr. Davis's house from Friday after school until Monday morning, with an equal division of time for all the children during the summer. The trial court expressed concern that Mr. Davis placed a greater emphasis on paying for extracurricular activities while allowing the family home to go into foreclosure.

On appeal, Mr. Davis contends the trial court provided no valid rationale for its designation of Ms. DeBose as the domiciliary parent and failed to apply any of the fourteen factors enumerated in La. C.C. art. 134. He argues the trial court punished/penalized him for using his income to invest in activities for the children, as opposed to paying the monthly mortgage note on the family home, by "stripping him of shared custody" of the two younger children.

Physical custody of children should be shared equally to the extent it is feasible and in the best interest of the child. La. R.S. 9:335(A)(2)(b). The testimony in this matter revealed that the parties had been sharing physical custody of the children on a week to week basis and that the schedule was detrimental to the two younger children, who were exhibiting signs of anxiety and behavioral issues. According to Ms. DeBose, shared custody was not feasible because of the lack of communication with Mr. Davis. In determining the best interest of the younger children, the trial court addressed Mr. Davis's decision to pay for the children's extracurricular activities without ensuring the children had a place to live. One of the factors enumerated in La. C.C. art. 134 is the capacity and disposition of each party to provide the child with food, clothing, medical care, and other material needs. La. C.C. art. 134(A)(4). The trial court clearly found that factor weighed in Ms.

12

DeBose's favor. Mr. Davis testified that he would like to remove the children from their current schools and enroll them in Central schools. By awarding the primary custody of the two younger children to Ms. DeBose during the school year, the trial court ensured the children would remain in their current schools, factors enumerated in La. C.C. art. 134(A)(5) and (10).

The best interest of the child test under La. C.C. arts. 131 and 134 is a fact-intensive inquiry, requiring the weighing and balancing of factors favoring or opposing custody in the competing parties on the basis of the evidence presented in each case. *Martello v. Martello*, 2006-0594 (La. App. 1 Cir. 3/23/07), 960 So. 2d 186, 191. In this case, the trial court had the benefit of seeing the parties and hearing their testimony, and carefully crafted a custody arrangement that met the needs of each of the children. Based upon our review of the record, we find no manifest error in the trial court's determination that Ms. DeBose should be designated as the domiciliary parent of the three children and the primary custodian of the two younger children. This assignment of error lacks merit.

**Assignment of Error Number 4**

In his fourth and final assignment of error, Mr. Davis argues the trial court erred in its award of child support by failing to personally receive and or review the calculations and allowing Ms. DeBose's counsel to prepare said calculations with work sheets using information that was neither discussed, provided, or presented to the trial court. Specifically, Mr. Davis contends the child support worksheet and awards provided Ms. DeBose with a credit for health insurance although he has always covered the health insurance for the minor children. He further contends the awards were based on incorrect income for the parties as both he and Ms. DeBose are teachers and make nearly the same income.

At the conclusion of the hearing, the trial court instructed Ms. DeBose's counsel to prepare the child support calculations based on the incomes as introduced

during trial, using child support obligation worksheet "B" from the date of judicial demand until the time of the hearing, since the parties were exercising shared custody. The trial court further instructed Ms. DeBose's counsel to use worksheet "B" for the oldest child and worksheet "A" for the younger children going forward from May 30, 2024.

The July 2, 2024 judgment ordered that Mr. Davis's child support obligation from August 22, 2022 through May 30, 2024 for all three children was $205.34 per month, as calculated using worksheet "B," based upon Mr. Davis's gross income of $5,231.13 per month and Ms. DeBose's gross monthly income of $4,323.07, and the net health insurance premium cost for the minor children of $90.00 per month. The worksheet was attached as an exhibit to the judgment. The judgment further ordered that Mr. Davis's child support obligation commencing on June 1, 2024 for A.D. was $101.44 per month, as calculated using worksheet "B," based upon Mr. Davis's gross income of $5,231.13 per month and Ms. DeBose's gross monthly income of $4,323.07, and the net health insurance premium cost for A.D. of $30.00 per month. The worksheet was attached as an exhibit to the judgment. The judgment further ordered that Mr. Davis's child support obligation commencing on June 1, 2024 for the younger two children was $1,027.29 per month, as calculated using worksheet "A," based upon Mr. Davis's gross income of $5,231.13 per month and Ms. DeBose's gross monthly income of $4,323.07, and the net health insurance premium cost of $60.00 per month. The worksheet was attached as an exhibit to the judgment.

Mr. Davis testified that while his gross income in 2023 was $62,773.62 ($5,231.13 per month), he changed jobs in August 2023 and his net take home pay at the time of the hearing was $3,000.00 per month. However, he failed to produce any documentary evidence of his current pay and further indicated he was considering working during the summer. He likewise failed to produce any evidence that he provided health care for the children.

14

There is a rebuttable presumption that the amount of child support obtained by use of the guidelines is the proper amount of child support. La. R.S. 9:315.1(A); *Walden v. Walden*, 2000-2911 (La. App. 1 Cir. 8/14/02), 835 So. 2d 513, 519. Based upon our review of the record, we find no manifest error in the trial court's factual determination of Mr. Davis's income. Using that income, counsel for Ms. DeBose calculated the child support by using the statutory guidelines. The worksheets prepared by Ms. DeBose's counsel were incorporated into a judgment that was signed by the trial court. We find no error in the child support awards, which were obtained by use of the child support guidelines. This assignment of error lacks merit.

## CONCLUSION

For the foregoing reasons, the trial court's July 2, 2024 judgment is affirmed. All costs of this appeal are assessed to Philip Jacoby Davis.

**AFFIRMED.**